DANIEL MYERS, Administrator of Simon Albert, deceased, Plaintiff in Error, v. JOHN MALCOM, Administrator of Joseph Malcom, deceased, Defendant in Error.

ERROR TO MARION.

The declaration made by a deceased party while living with a step-son, that he intended to give the step-son a note he held' against him, does not give the step-son a legal claim to have the note surrendered to him, nor is it any defense to an action upon it.

Where parents have been living with a step-son, it is proper for a jury to decide, upon all the facts, whether the parents were to pay for their board, or whether they were living upon the hospitality of their relatives.

JOHN MALCOM, administrator of Joseph Malcom, deceased, sued Simon Albert on a note given by him to Joseph Malcom. Suit before Probate Court, and judgment for plaintiff below for $61.48. Defendant appealed to Circuit Court, and died. Daniel Myers, administrator of Simon Albert was made a party, and the cause was heard before BREESE, Judge, and a jury, at August term, 1857. Verdict for plaintiff below for $108.57; motion for new trial denied; judgment for plaintiff.

The note sued on was as follows :

One day after date I promise to pay Joseph Malcom, the sum of one hundred dollars and seven dollars and fifty cents, for value received of him this April the 13th, 1855. Witness my hand and seal.

SIMEON ALBERT. [SEAL.]

There was a set-off by defendant as follows :

| MALCOM to ALBERT, | DR. |
|---|---|
| To money paid going to Missouri | $200.00 |
| To money paid for teams going to Chester | 5.00 |
| To use two teams seven days, at $2.50 each | 35.00 |
| To boarding and washing from first of April, 1855, to September, 1855, six months, at $16 per month | 96.00 |
| To same from October 1st, 1855, to February, 1856, four months, at $16 | 64.00 |
| To 110 boards | 1.00 |
| | $401.00 |

*Levi Albert* testified for the defendant below, that he went with Malcom and Albert to Missouri and back ; Albert paid *all the expenses there and back.*

*Thomas Saunders.* Knows that Albert went to Chester after goods for Malcom and himself—gone five or six days—went with two teams—one Simon Albert's and one Levi Albert's—*Malcom and wife* staid with Albert from first of May, 1855, until last of August or first of September, 1855, at another time

from March to September 1856—at one time four months, at another six months; board was worth $2.00 to $2.50 each, per week; Malcom and wife were very old and feeble, did nothing, were a great deal of trouble, etc. Don't think they contributed anything to support of family; old lady required a good deal of waiting on.

*Hiram Torrey* testified to same fact as last witness, and says further, their board worth $2.50 each, per week; saw two teams start to Chester; gone a week; teams worth $2.25 or $2.50 per day; one team Simon's, other Eli Albert's.

*Eli Albert* testified that Simon Albert went to Chester for old man Malcom's things, with two teams, one was Simon's, the other *witness's;* witness charged Simon for his team, $2.50 per day; gone a week.

*Robert Malcom* said he moved old man Malcom to Simon's, (defendant) in December, 1856; that old man died February, 1857; the old man wanted to go to Simon's, and Simon took him.

*Anise Malcom.* Knows that old man Malcom and wife boarded at Simon Albert's two months, from December, 1856, until in February, 1857; don't know what it was worth.

*Mary Moore.* Old man Malcom said he intended to give the note to Simon.

WILLARD & HAYNIE, for Plaintiff in Error.

S. L. BRYAN, for Defendant in Error.

CATON, C. J. The first item of set-off claimed in this case, is satisfactorily answered by the fact, that the intestate Malcom loaned the money to Albert to bear the expenses to Missouri, and for that money the note was given, upon which this action was brought. This circumstance conclusively shows, that it was the understanding of the parties, that Albert was to bear those expenses. As to. the items for board of Malcom and wife, and transporting his goods from Chester, the question was fairly put to the jury by the instructions of the court, whether those services were intended by Albert as a gratuity to his father-in-law or not, and they have found that they were so intended, and we think that finding warranted by the evidence. We do not deem it necessary to review the evidence in the case at length, which leads to this conclusion. The relationship between the parties prepares the mind at once to believe, that Albert was extending towards his step-parents, when taking care of them in their old age, a gratuitous and grateful hospitality, rather than keeping them for the mercenary consideration of dollars and cents. The declaration made by Malcom, while there, that he intended to

give this note to Albert, shows that a sense of the relationship between them, and the kind attention and hospitality which he was enjoying from his son-in-law and daughter, were present to his mind, and of itself rebuts the idea that he supposed he was there as a boarder. We may regret that the old gentleman died before he executed this intention, but that cannot alter the legal question presented. Such declared intention created no legal claim in Albert to have the note given up to him, and no defense against the note in the hands of the administrator. The judgment of the Circuit Court must be affirmed.

*Judgment affirmed.*