# NICHOLAS FREEMAN *et al.* Admrs. etc.

## *v.*

## JAMES FREEMAN.

1. PARENT AND CHILD—*presumption as to pay for services after majority.* Where a child remains with his father after his majority, the presumption will be, in the absence of a contract to pay for services, or circumstances from which one may be implied, that no compensation was to be given for such services.

2. But where a son, some time after his majority, left his parents, and commenced business on his own account, and was afterwards induced by his father to return, all his other sons having left him, and he continued to labor for his father for many years, managing his affairs and supporting his parents, for which he received nothing but his board, scanty clothing and a little spending money: *Held,* that it was but reasonable to presume that the father intended to pay, and the son to receive pay, for his labor, either in money or by devise in his father's will.

3. And in such a case, where the proof showed that the father intended to compensate such son, by devising his farm to him, but was killed before he had made his will: *Held,* that a verdict in favor of the son for services, against the father's estate, for the time the son labored within five years prior to the father's death, would not be disturbed.

4. STATUTE OF LIMITATIONS—*for services.* Where a son, who, after his majority, had left his father, was by the latter induced to return and remain in his service for 23 years, under the expectation of being compensated by devise in his father's will, but the father, being accidentally killed, failed to make any will, and the son filed his claim for services, against the father's estate: *Held,* that, the statute of limitations being pleaded, the son could only recover for his services for the five years next before presenting his claim, deducting the time that elapsed between the death of the father and the day fixed by the administrators for the adjustment of claims.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

Messrs. BOTSFORD, BARRY & LOVELL, for the plaintiffs in error.

Mr. JOHN W. RANSTEAD, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a claim, filed in the probate court of Kane county, for $2821, against the estate of Patrick Freeman, deceased, by defendant in error, who was a son of deceased. The claim was based on services rendered by the claimant for deceased, extending through a space of several years, after he arrived at 21 years of age. He claims that the labor was performed under an implied promise of payment for the labor.

On a trial in the probate court, a judgment was rendered against claimant, when he appealed to the circuit court of the county, and, on a trial in that court, the jury found a verdict in his favor for $1275. After overruling a motion for a new trial, the court below rendered a judgment on the verdict, from which an appeal is prosecuted to this court, and errors assigned.

It is not claimed that there was any special agreement, at any time during the 23 years appellee claims to have labored for his father, that he should be paid for his services. It appears that he remained on the farm, and worked as hired hands usually do, and, in addition, marketed the surplus produce, and took charge of the management of the place. He seems to have been industrious, and faithful to the interests of the father and family. It in fact was on his labor mainly the family had to depend for support. Again, the father was much involved, and the farm was relieved from incumbrance through the labor and efforts of defendant in error, and thus preserved from sale; as the father admitted that had it not been for defendant in error, he would have had no home.

The other sons left their father as fast as they became of age, and have never assisted their father to any extent, but have left the entire burthen upon defendant in error of managing the farm, supporting the family and paying the mortgage upon the farm, with such assistance as the father, at his advanced age, could render; and for all of this there is no

pretense that defendant in error ever received any compensation beyond his board, lodging, clothing of the plainest character, and a small amount of spending money. Michael, on the other hand, on arriving at age, left his father, who assisted him in purchasing a farm. Nicholas, when he became of age, left home, and learned a trade, and has never returned to live with his father. All of the daughters but one married, and have remained at their own homes, defendant and his sister only remaining at home to care for their aged parents.

After defendant in error had left home, and gone to Rockford to work, he was prevailed upon by his father to return home and assist him on the farm. On what precise understanding this arrangement was made, does not appear, but can only be inferred from circumstances. On several occasions, the father said he intended to will the farm to defendant in error, as he had stood by him; and he said to Haydon and Solon, but a few weeks before his death, and at a time when he sent for the former to draw his will, that he intended "to leave the farm to James, and the personal property he was going to divide between his daughter Kate and his wife; said he owed some debts, and the personal property would pay off some parties he owed." Solon, who was present at this conversation, states that he spoke of making the disposition of his property as testified to by Haydon; and further states that intestate said that if it had not been for James, he would not have had a home, and he would not "have the sin on his soul to do anything else."

It is clear, beyond doubt, that it was the intention of intestate to have willed the farm to defendant in error. He sent for Haydon to so draw his will, and he was only prevented at that time from carrying out his purpose for the want of a form to enable Haydon to draw his will. He, at the time, said that so soon as he recovered he would go to Elgin and have it drawn; and had he not been accidentally killed, he would, in all probability, have so executed a will.

There is no pretense that defendant in error was ever paid, or received, anything for his labor, during this long period, beyond his board, lodging, cheap, plain clothing, costing, as the witnesses say, about $30 a year, and a small sum of spending money. We can not but presume that he expected pay, or compensation in some manner, for these services. He, like his brothers, left to work for himself, but was induced to return and assist his father. Being then considerably more than 21 years of age, we can only infer that he left to do and act for himself. Prior to that time, he, like his brothers, had remained at home, and there is nothing to show that he or they, up to that time, expected compensation for the services they were rendering; but the presumption is changed when he had left to act for himself, and was again induced to return. After leaving, the presumption arises that he thenceforth intended to labor and accumulate property for himself; and when he returned, at the solicitation of the father, it is but a reasonable presumption that the father intended to pay, and he to receive pay, for his labor, either in money or by a devise in his father's will; and, as the father said to several persons, at different times, that he intended to will the farm to defendant in error, we may reasonably presume that such was the agreement or understanding between them.

He remained after becoming of age, nearly 23 years, and until he was near 44 years old, and 14 years after his brothers left and had set up for themselves; and whilst filial affection no doubt entered into the inducement to remain, we can hardly presume that he intended to give all of his labor and earnings to his father, simply that it might be distributed, at his death, equally amongst his children, he only getting one-sixth part. He had, as the father said, preserved the property for a home for his parents, in their declining years. In such a case, equity and a sense of justice appeal strongly to our nature to act upon the principle that the "laborer is worthy of his hire;" and that justice and right may not be perverted, the jury were warranted in acting upon

110        FREEMAN *et al.* ADMRS. *v.* FREEMAN.        [Sept. T.,

Opinion of the Court.

slight preponderating evidence, tending to show an understanding that defendant in error was to receive compensation for his labor; and we are clearly of opinion that the evidence preponderates, slightly it may be, but still in favor of the finding of the jury, and we have no disposition to disturb the verdict.

The statute of limitations having been interposed, defendant in error could only recover for five years next before presenting his claim, deducting the time that elapsed between the death of his father and the day fixed by the administrator for the adjustment of claims against the estate.

Then, does the evidence sustain the amount found by the jury? We think it does. The witnesses fixed the yearly value of his services, after the commencement of the war, variously from $175 to $288; one witness fixing it at $23 or $24 per month; another at $16, $17 or $18 per month. From this evidence, the jury were warranted in finding that $255 a year, with board and clothing, was only a reasonable compensation; but even if a less sum be allowed, with six per cent after due, it would produce the amount found by the jury. Considered in any light that is reasonable, we regard the evidence as fully warranting the amount the jury have found.

We perceive no error in the admission of evidence, nor do we see, when all of the instructions are considered, that there was any misdirection of the jury. They fairly presented the law of the case, and we see that all that was proper in the refused instructions was given in others.

We, after a careful examination of the record, fail to find any error that could have prejudiced plaintiffs in error, and the judgment of the court below must be affirmed.

*Judgment affirmed.*