GEORGE GINDERS, ADMINISTRATOR, ETC.,

v.

JULIA M. GINDERS, CLAIMANT, ETC.

*Administration of Estates—Claim for Services Rendered by Member of Family—Rules—Presumptions—Burden of Proof—Instructions—Evidence—Admissions of Intestate, Admissible—Express and Implied Contracts.*

1. Where persons reside together as members of one family, and one of them renders services to the head of the family, the law does not imply a promise to pay therefor, nor a promise on the part of the one rendering such service to pay for maintenance, the presumption being that both services and maintenance are gratuitous.

2. Where services are rendered within the family, under the rule of this State there can be no recovery against the head of such family unless it appears that there was an express promise to pay, or that the services were rendered under the expectation of both parties that payment was to be made, the burden of proof being upon the one who seeks to recover for such services.

3. Both an express and an implied contract can not exist at one and the same time concerning one and the same subject-matter.

4. In the case presented, in which the daughter-in-law of the deceased seeks to recover from his estate compensation for services rendered as a member of his family, it is *held:* That certain instructions were erroneous for improperly stating the rule as to the burden of proof and ignoring the circumstances surrounding the claimant, the intestate and her infant children; that statements made by the intestate relative to leaving the claimant a home were properly admitted; and that, if the services were rendered under an agreement that the intestate would by will or otherwise provide the claimant a home and support upon his death, and he failed to do so, she may recover upon a *quantum meruit* for the five years not barred by the Statute of Limitations.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Ogle County; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. N. C. WARNER, for appellant.

In the case of children after they attain majority, or grandchildren, or nephews and nieces who live with a relative or parent as members of his family, without any contract or un-

derstanding that he shall pay for their maintenance, the law will not imply a promise to pay on either side. Robinson v. Cushman, 2 Den. 149; Andrews v. Foster, 17 Vt. 556; Fitch v. Peckham, 16 Vt. 150; Guffin v. First Nat. Bank, 74 Ill. 262; Owen v. Parsons, 5 Watts & S. 357, 513; Wier v. Wier, 3 B. Mon. 645; Funk v. Lawson, 12 Ill. App. 229.

Where parties competent to contract, enter into an arrangement by which one becomes a member of the family of another, under circumstances that forbid the idea of a promise or contract for pecuniary compensation, no action will lie to recover such compensation for services rendered during the existence of such arrangement. Promises are implied in consequence of the nature of the transaction. And it is only where there is no express promise that the law will sometimes imply one. Implied promises only arise where reason and justice dictate that a person should do the thing which the law thus implies he has agreed to do. No implied contract will arise to pay for services rendered by, and between members of the same family. Hall v. Finch, 29 Wis. 278; Andrews v. Foster, 17 Vt. 556; Duffy v. Duffy, 4 Pa. St. 399.

Transactions of this kind stand upon a different footing from those between persons who are not bound together by family ties. Van Kuren v. Saxton, 3 Hun (N. Y.), 547; Wilcox v. Wilcox, 48 Barb. 327.

The relationship between the parties prepares the mind at once to believe that Henry Ginders was extending to appellee and her children the hospitality and comfort of a home in her widowhood and their orphanage, and was not keeping them for any mercenary consideration, and as they did not pay for board, and were not in the attitude of servants, no presumption will be indulged that appellee then expected pay for services. Fruitt v. Anderson, 12 Ill. App. 421; Myers v. Malcom, 20 Ill. 621.

Where two parties understand they are mutually receiving and rendering favors with no present design to make them pecuniary charges against each other, no recovery can be had by either. Dunlap v. Allen, 90 Ill. 108; Jared v. Vanvleet, 13 Ill. App. 334.

The family relation is itself strong negative proof, and raises a presumption that no payment or compensation was to be made beyond that received by claimant at the time, which can only be overcome by clear and unequivocal proof to the contrary. The evidence must be clear, direct and positive that the relation was not a family relation, but was the relation of debtor and creditor, or master and servant. To establish such relation it is evident some new arrangement or contract to that effect must be shown. No man is made a debtor without his knowledge or consent, or under circumstances where he has no reason to expect that such was his position. We find the best considered authorities hold that an express contract must be shown. Deitrich v. Waldron, 90 Ill. 115; Hall v. Finch, 29 Wis. 286; Hartman's Appeal, 3 Grant's Cases, 271; Duffey v. Duffey, 44 Pa. St. 402; Bash v. Bash, 9 Pa. St. 260.

Mr. J. C. GARVER, for appellee.

BAKER, P. J. This controversy grows out of a claim for $3,000, filed by Julia M. Ginders, appellee, against the estate of Henry Ginders, deceased, for services rendered him in his lifetime.

In 1871 the deceased was living with his wife on his farm in Ogle County, Illinois. They had two children, both sons; the elder, George, had married and moved away some years prior to that time, and the younger, Joseph, was living with his parents. In that year Joseph was married to appellee, and she immediately made her home on the farm with her husband and his parents. Shortly thereafter the wife of Henry Ginders died, and from that date Joseph and his wife continued to live with said Henry for some seven years and until the death of Joseph in January, 1878. The latter left surviving him, his widow, the appellee, and two infant daughters, now about thirteen and eleven years of age, respectively. Appellee and her two daughters remained on the farm with Henry Ginders, the deceased, who was father-in-law of the one, and grandfather of the others, and continued to make his house their home, until

his death on the 20th of February, 1885.   Joseph left appellee and his children almost wholly unprovided for, and they seem to have remained with deceased as members of his family. Appellee was an industrious and thrifty woman, managed the house and attended to all the necessary and usual household duties, did the cooking for deceased and his hired man, and nursed and took care of the former in his old age and last sickness.   There appears to have been an arrangement between appellee and her father-in-law, that she was to have the dairy and poultry products of the farm, and out of their proceeds supply the family groceries, flour and meat excepted, and use the residue for clothing her children and herself.

It further appears that she not only did this, but was able to purchase many articles of household furniture, which she still retains.   It was stipulated upon the trial that Henry Ginders died intestate and left as his only heirs at law, his son, the appellant administrator, and his two granddaughters, and that he died seized of unincumbered real estate of the value of $5,000 and of $2,900 in personal property, and that his estate was at the time of his death practically free from debt, unless it be the claim made by appellee is a just debt.

Ordinarily, where one person labors or performs services for another, a presumption of fact arises that the person for whom the labor is done or services performed is to pay the value of. such labor or services.   But, where persons are living together as members of one family, and a member of such family renders services to the head of the family, the law does not imply a promise to pay therefor.

And so, on the other hand, there is not, in such case, an implied promise that the member of the family will pay the head of the family for board and maintenance.   Within the family the presumption is that both services and maintenance are gratuitous.   Such presumptions, however, are mere presumptions of fact and may be rebutted.

Some of the courts have held that within the family relation and between a member and its head, there can, under no circumstances, be a recovery upon an implied contract for work and labor, and that it must be shown that an express contract

was actually made. The rule is not held so strictly in this State. Here we understand the doctrine to be, that where services are rendered within the family there can be no recovery against the head of such family, unless it be shown, either that there was an express promise to pay, or that the services were rendered under the expectation of receiving pay therefor on the one side, and under the expectation of paying therefor on the other side. The following authorities sustain this view of the law. Myers v. Malcom, 20 Ill. 621 ; Freeman v. Freeman, 65 Ill. 106 ; Miller v. Miller, 16 Ill. 296 ; Morton v. Rainey, 82 Ill. 215 ; Guffin v. National Bank, 74 Ill. 262 ; Dunlap v. Allen, 90 Ill. 108.

The fact that the services were rendered for which this claim was made, was not a matter of contention on the trial, but the contentions of appellant were, *first*, that the services were gratuitous, and, *second*, that they were rendered under a special contract that in consideration of them appellee was to receive the dairy and poultry products of the farm, less the cost of family groceries, and a home and living for herself and children during the lifetime of the intestate. As appellee was a member of the family of appellant's intestate when the work and labor was done, the presumption was that they *were* gratuitous ; and the burden was upon appellee to either prove an express promise to pay or else show that it was the intention of appellee to receive pay, and the intention of the intestate to make payment for the services performed. The jury should have been instructed that appellee had the burden of proving a cause of action against the estate ; that this could only be done in one or the other of the two modes above mentioned, and that the mere performance of services by her for the deceased did not make out a case against the estate.

The first instruction given for appellee was " that the burden of proof is upon the estate or the administrator to prove payment, if any is claimed to have been made." This was calculated to mislead the jury and induce them to believe that, as the rendition of the services was not a subject of contention, the law stepped in and implied they were to be paid for, and that as in ordinary cases where the services are not

disputed, and payment is claimed, the burden is on the defendant.

The second instruction told the jury that if they believed from the evidence that "there was an express or implied contract, and that the services were rendered by claimant, and have not been paid for, then the claimant is entitled to recover in this action."

This, also, under the circumstances of the case on trial, was misleading. It did not draw the distinction between the case at bar and ordinary suits for work and labor, and from it the jury might readily conclude that if the services were performed and not paid for, then there was an implied promise or contract to pay.

The third instruction was as follows: "If you believe from the evidence that the claimant did, within five years next preceding the death of Henry Ginders, perform labor and services for said Henry Ginders, at his request, and that no price was fixed or agreed upon, and that the same has not been paid, then the law will imply a promise from said Henry Ginders to pay claimant in this proceeding for such labor and services, what, if anything, the same are reasonably worth."

This instruction might have been well enough in some cases and as applied to a proper state of circumstances, but as applied to the case in hand it was very clearly vicious and erroneous; it omitted the very important fact that the claimant when she performed the labor was a member of the family of Henry Ginders; and that being a fact in the case, the law does not, from the facts stated in the instruction, imply a promise to pay. Where a member of the family does work for the family at the request of the head of the family, the law will not imply a promise on the part of such head of the family to pay therefor, unless it appears that it was the expectation of both parties, at the time the labor was performed, that it would be paid for. The fourth instruction is similar to the third, and is liable to the same objections. It contains the qualification, "Unless it shall appear from all the evidence that such work and labor were done under a special contract, or as a gift or gratuity;" but this did not cure the defects; it

left the burden upon appellant to show by his affirmative evidence that the work was a gratuity, whereas it was a presumption that followed from the relations of the parties that it was a gratuity, and the burden was upon appellee to rebut such presumption.

The sixth instruction informed the jury that it was " wholly immaterial what share the little girls of claimants may be entitled to in the estate of their grandfather, as his heirs." We think this was erroneous ; it excluded from the jury as wholly immaterial a circumstance the jury might properly take into consideration.

The circumstances surrounding the intestate, and appellee, and her infant children, the fact the first mentioned had made no will, that he had considerable property, that the daughters of appellee were the prospective and afterward actual heirs to a moiety of his estate, may all be regarded in connection with the other testimony in determining the intentions and expectations of the parties to the transactions here involved.

We see no valid objection to the ruling of the court admitting in evidence the testimony of Kittlewell, Letts and Fay in regard to statements made by Henry Ginders with reference to leaving appellee a home, and making provision for her and her children : or to the ruling that permitted Agnew and Kelley to testify to the conversations that occurred between the deceased and appellee, while the former was in his last sickness. In a litigation against an administrator, the admissions of his intestate are competent evidence against such administrator.

It is true that both express and implied contracts can not exist at one and the same time concerning one and the same subject-matter. But this rule, *ex vi termini*, has application only where the subject-matter is the same or where the two contracts cover the same ground as to subject-matter. It is not legally impossible that it may have been the understanding and intention of both appellee and the intestate, that the former should serve as housekeeper for the latter during his lifetime, and that in consideration thereof he would, at or before his death, provide for her a home, or make provision for

Ginders v. Ginders.

her support, and at the same time there have been an arrangement between them that, in the meanwhile and during the lifetime of intestate, she should have the excess of the dairy and poultry products for clothing herself and children, and for her own use and purposes. Of course, if it should be found as matter of fact that the arrangement was as broad as is contended for by appellant, and that the dairy and poultry products and temporary home and living for appellee and her children covered the ground of compensation for services, then it would not be legally admissible to say there was a different and implied contract.

If the services of appellee were rendered under an agreement with the deceased that she would remain with and work for him during his lifetime, and that he would, by will or otherwise, provide her a home and support upon his death, and he did not do so, then appellee may recover of his administrator as upon a *quantum meruit;* but, the Statute of Limitations being interposed, could only recover for five years next before presenting her claim, deducting the time that elapsed between the death of intestate and the day fixed by the administrator for the adjustment of claims against the estate. Freeman et al., Admrs., v. Freeman, 65 Ill. 106.

The view we have taken of the case obviates the necessity of considering the motion and cross-motion that were reserved to the hearing.

For the errors in the instructions of the court the judgment is reversed and the cause remanded.

*Reversed and remanded.*