R. C. GRISHAM, as *Administrator*, etc., v. O. E. LEE.

R. C. GRISHAM, as *Administrator*, etc., v. ANNA M. GREER.

Nos. 11,325, 11,326.   (60 Pac. 312.)

1. MASTER AND SERVANT--*Limitation of Action for Wages.* If there is a single hiring, and the term of service of the employee and, also, the time when his compensation shall become due are not fixed by agreement or understanding, and the hiring and service continue without interruption or payment until the death of the employer, the employment, in the absence of evidence of a general custom or usage, may be deemed continuous, and the statute of limitations will not begin to run against a claim for compensation until the services are ended.

2. ———— *Nature of Contract— Question for Jury.* When the facts as to the nature of the employment and as to when the compensation become payable are doubtful and disputed, they should be left to the determination of the jury; and in such case the court properly refused an instruction that, where a person was employed by another and no time was fixed for the termination of the employment or for the payment of compensation, and the employee remained continuously in service for about seven years, the law would deem it an employment from year to year, and that compensation would become due at the end of each year, at which time the statute of limitations would begin to run thereon.

3. ———— *Action for Wages.* A cause of action upon an entire and continuous contract for service does not accrue until it is terminated.

4. ———— *Testimony Sufficient.* Testimony examined, and held to be sufficient to sustain the verdict and judgment.

Error from Montgomery district court; A. H. SKID-MORE, judge. Opinion filed March 10, 1900. Affirmed.

*Jos. Chandler*, for plaintiff in error.

*A. B. Clark*, and *Geo. W. Clark*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : Two cases were brought against the administrator of the estate of J. M. Talbott, deceased — one by Anna M. Greer, and the other by O. E. Lee, each of whom was employed by and performed services for Talbott during his lifetime. Claims for these services were presented to the probate court and allowed, and, appeals having been taken to the district court, trials were had there which resulted in verdicts and judgments against the administrator. As the cases involve substantially the same points they were argued together, and will be considered and disposed of in a single opinion.

It appears that Talbott owned and operated a large farm in Montgomery county and was extensively engaged in breeding and feeding stock. Although married, he had been separated from his wife for more than seventeen years, and needing a housekeeper he sought and obtained the services of Anna M. Greer, who acted not only as cook and housekeeper, but performed much service outside the house in caring for the stock and in carrying on the farm. She was employed in August, 1889, and continued in his service until his death, which occurred on May 11, 1896. Afterward she presented a claim against the estate for seventy-two months' services at the rate of seventy-five dollars per month ; and for nine months' services, during which she performed extra services as nurse, she asked compensation at the rate of $120 per month. On her part, it it is claimed that there was no express

agreement as to the term of service, nor as to the wages she should be paid, but that it was an indefinite, entire and continuing contract; that her compensation became due at the close of the service, and that the statute did not begin to run against her claim until that time.  On the other part it was claimed: (1) That in addition to her board she was to receive as compensation the butter, eggs and chickens from the farm, and no more; (2) that her services were not reasonably worth the amount she claimed from the estate; (3) that her employment was from year to year, and that the statute of limitations began to run on the compensation due at the end of each year and was barred at the expiration of three years, where no action was brought to recover the same.

The testimony was somewhat obscure with respect to the employment, as Talbott, who made the agreement, had died, and the claimant, who made the agreement with him, was not competent to testify as to communications and transactions had with him. Proof was offered, however, that he stated to others that if she stayed with him until he died—he being in feeble health a part of the time—he intended to do what was right and reasonable as to compensation; that her services were worth those of two or three men; that she worked day and night taking care of him during his sickness, and that he intended that she should be well paid for her work; that he intended that she should have a home and a part of his property.  Another statement was that he intended that she should be well paid for her work, if it took half of what he was worth.

There is testimony to the effect, and the court found, that she received no compensation during the period of nearly seven years' service, except her living on the place.

An instruction was requested that if she was employed by Talbott and there was no time fixed for the termination of her employment or for the payment of her compensation, and she remained in his employment from August, 1889, to May 11, 1896, continuously, the law would deem it an employment from year to year, and at the end of each year her compensation for the service for such year would become due, and the statute of limitations would begin to run on that amount of the compensation, and would be barred at the expiration of three years unless an action was commenced to recover the same. This instruction was refused, and the court left it to the jury to determine whether it was a continuous and entire contract, or whether it was a hiring from year to year and the compensation for the service became due at the end of each year. The instruction requested was rightly refused. It was not for the court arbitrarily to declare how long the service was to continue or when compensation for the service rendered became due. Under the testimony these were doubtful and disputed facts, and were therefore properly left for the determination of the jury. The mere fact that no time was fixed for the termination of the service does not necessarily make it an employment from year to year; nor does the fact that no payment was made till the end of the service necessarily determine that it was an entire contract, or that compensation was not due until the close of the service.

It is said that a general usage exists that an indefinite hiring is to be treated as a hiring from year to year, the compensation to be payable yearly, but no such usage was established by the testimony in this case; and if a usage had been shown, it was not referred to in the instruction requested, nor was the jury directed to include it as an element in the find-

ing to be made on this question. Whether it was an entire, continuing contract, and when payment for service became due, were to be determined from all the facts and circumstances submitted to the consideration of the jury, including the statements and conversations of the parties with respect to the employment, their conduct and relations with each other, the fact that the service was uninterrupted, and that no compensation was paid until the end of the service, except board and clothing. The testimony, although not so full as might be desired, was sufficient to sustain the finding of the jury, which was in effect that the employment was continuous, and that a cause of action accrued at the close of the service.

The case of *Greenwell v. Greenwell*, 28 Kan. 675, referred to by counsel, is not an authority for an arbitrary declaration that an indefinite agreement as to period of service implies a hiring from year to year, or that compensation is payable at the end of each year. The principal question before the court was what the implication of the law was between mother and son where the services were performed by the mother for the son, and board and washing were furnished by the son to the mother without agreement, promise or understanding as to payment. Even in that case the fact as to whether compensation, if any was due, became payable at the end of the year, was submitted to the jury, and the court modified a requested instruction as to when the statute of limitations began to run by requiring the jury to find as a fact when the board and washing became due.

The case of *Ayres v. Hull*, 5 Kan. 419, is somewhat similar in its facts, and is also cited by the plaintiff in error. It holds that when a sister lives with the family of a brother, and assists in the household serv-

ice without promise, contract or understanding that wages should be paid, the law will not imply a promise to pay for services so rendered. It was said that "the family relations are too sacred to be invaded and disturbed by presumptions of law that are reasonable and proper when applied to the acts of strangers." No such relations existed in this case, and as between these parties, and in the absence of an express agreement, the law implies a promise by Talbott to pay the defendant in error what her services were reasonably worth. If there was a single hiring, and there is no evidence of any other, and the term of service or the time when payment was to be made was not fixed by agreement or understanding, and the hiring and service continued until the death of Talbott, the employment, in the absence of evidence of a general usage or custom, may be deemed continuous, and the statute of limitations did not begin to run until the services were ended. Some authorities are cited holding to a different rule, but we think the view taken is sustained by the better reason and by abundant authority. (*Littler v. Smiley,* 9 Ind. 116; *Carter v. Carter,* 36 Mich. 207; *Story v. Story,* 1 Ind. App. 284, 27 N. E. 573; *Taggart v. Tevanny,* 1 Ind. App. 339, 27 N. E. 511; *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639; *Hauser v. Sain,* 74 N. C. 552; *Schoch v. Garrett,* 69 Pa. St. 144; *Kansas Pacific Ry. Co. v. Roberson,* 3 Colo. 142; *Jackson v. Mull,* 6 Wyo. 55, 42 Pac. 603; *Hall v. Wood,* 9 Gray, 60; Wood, Limit. 332.)

Complaint is now made as to the instructions given, but no exceptions having been taken to them, the objections are not available.

Nor do we find anything substantial in the objections made to the rulings on the admission of testi-

mony.   It is strongly urged that a new trial should have been allowed because the amount awarded by the jury is excessive.   According to the testimony, Miss Greer performed services of the most irksome and arduous character.   Aside from the ordinary household duties, she milked from ten to fifteen cows, assisted in feeding from 250 to 1000 hogs, helped care for and feed about 250 head of cattle, and from forty to fifty horses ; she also assisted in harvesting grain, worked in the hay-field, repaired fences, and did almost all kinds of work that is done on a farm ; she assisted in treating and caring for the hogs when they were attacked with cholera, and at different times doctored and cared for cattle and horses when they were injured or diseased ; she began work early in the morning and continued until late at night, frequently working until after midnight, and Talbott himself stated to a neighbor that he would rather have her services than those of two or three ordinary men. During her employment he had two long periods of sickness, during which she acted as nurse for him and cared for him continuously.   He was urged to employ an additional nurse lest Miss Greer should break down, but he declined to have any one else with him, and she remained and cared for him day and night until the end.   In view of the nature of the services rendered and of the testimony as to the value of the same, there is no difficulty in saying that the award of the jury, although liberal, is sufficiently supported by the testimony.

Passing to the claim of O. E. Lee, we find that he was employed by Talbott in January, 1891, and that the contract with him was similarly indefinite as to the rate of compensation and the time of payment for services rendered.   Being in poor health and in need of

a manager, for his extensive business, Talbott asked Lee, a nephew who resided in Tennessee, to come and take charge of his farm and business. He came and remained with Talbott until his death, and he contends that his hiring and term of service were continuous, and ended at the death of Talbott.

The principal points here, as in the Greer case, are as to the character of the hiring, when the compensation became due, and when the statute of limitations began to run. It appears that Lee worked diligently and faithfully for more than five years, and until Talbott's death, and there is testimony tending to sustain his theory and claim. The jury found in his favor, awarding him compensation at the rate of seventy dollars per month for the full time of service, and against the theory of the administrator that it was a hiring from year to year. An examination of the testimony shows that it was fairly a question of fact for the determination of the jury as to the character of the hiring and when a cause of action accrued thereon, and there being supporting testimony, we are not warranted in disturbing the verdict or judgment.

The other points to which attention has been called have been examined, but we find no material error nor anything requiring extended comment.

The judgment in each of the cases will be affirmed.