## Bridget Huber, Appellee, v. John J. McGlynn, Administrator, Appellant.

1. EVIDENCE—*effect given to verbal admissions.* Verbal admissions should be received with great caution. They are frequently unreliable and entitled to little weight and are subject to imperfection and mistake.

2. VERDICTS—*when set aside.* A verdict manifestly excessive and against the weight of the evidence will be set aside on review.

Contested claim in court of probate. Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded. Opinion filed April 15, 1911.

B. H. CANBY, for appellant.

DAN McGLYNN, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

John J. McGlynn, as administrator of the estates of John J. and Hanora Snowball, deceased, prosecuted this appeal from a judgment in favor of appellee rendered upon a claim originally filed against said estates in the Probate Court of St. Clair county and from that court appealed to the Circuit Court. The claims filed by appellee were for services rendered during three separate periods; the first from June 1, 1883, to October 30, 1900, at $20 per month, amounting to $4,080; the second for services rendered from October 30, 1900, to May, 1905, at $20 per month, amounting to $1,120; and the third for services and furnishing meals from May, 1905 to April 27, 1909, at $40 per month, amounting to $1,920. The total of the claim was $7,120, upon which there were credits of $1,209 cash paid between June 1, 1883, to October 30, 1900, and $80 paid from May to December, 1908, leaving a claimed balance due of $5,831.

The same claim was filed against both estates and the two were consolidated by agreement and tried by a jury. A verdict for $4,500 was returned for appellee upon which the court rendered a judgment.

The alleged errors of the trial court urged here for a reversal of the judgment will be considered hereafter. John J. Snowball and Hanora, his wife, had resided many years in East St. Louis. They had one son who died in 1889 leaving a daughter, Nellie Snowball, who still survives. The mother of Nellie died in 1900 and the latter was reared by an uncle in Ohio. John J. Snowball died February 14, 1909, and his wife Hanora on the 27th of April following.

From the year 1888 and continuously until their deaths, they resided in a dwelling at the corner of Sixth street and Summit avenue, East St. Louis, and on the same lot they had a building consisting of two four room tenements which was rented. The property belonged to John J. Sometime about the year 1884 appellee began to live with John J. and Hanora and so continued until the first of January, 1895, when she left there and engaged as a domestic doing household work for a family in St. Louis. During the time she lived with the Snowballs and prior to January, 1895, the testimony shows she did all the cooking, washing, ironing and other household work. After she went to St. Louis to work, John J. Snowball and Pat Mul-Queeney, a brother of appellee, went to St. Louis to get her to return to Snowballs and this brother testifies that Snowball told her she was foolish to leave after working so many years for them and "he would see she would be well paid for this when he died" or "well paid for her work when they died." The testimony shows she did return to the Snowballs on March 17, 1895, having remained absent from there some two and a half months and that she thereafter lived there and continued to do the household work until her marriage in October, 1900. After her marriage she did not live in the Snowball residence but lived about

a block away until 1902 or 1903 when she with her husband moved into the tenement house of Snowball above referred to, and continued to reside .there until the deaths of the Snowballs.

Taking up for consideration the first item of appellee's claim for services from June 1, 1883, until October 30, 1900, an allowance for any services prior to March 17, 1895, would, waiving all other questions, be barred by the statute of limitations which it was not necessary to plead specially.  Bromwell v. Estate of Bromwell, 139 Ill. 424.

There is evidence that John J. Snowball in conversations with the brother of appellee about 1890 or 1892, and up to 1898, would say "he didn't see how they could get along without her" and "he would see she was well paid when they died" but there is no evidence that any such promise or statement was ever made to appellee prior to the time appellee left and went to work in St. Louis January 1, 1895. Moreover, the fact that appellee left the Snowballs and went out to service in St. Louis tends to show there was at that time no such agreement between them.  At best, assuming she was not living there as a member of the family, there could have been but an implied promise to pay for services rendered which would be barred by the statute of limitations.  Freeman v. Freeman, 65 Ill. 106.

From the 17th of March, 1895, until October 30, 1900, when appellee was married, she lived with the Snowballs continuously and did the household work.

The evidence of the brother as before stated, was that the Snowballs were anxious for her to return and that in his presence Snowball told her she was foolish to leave after working these many years for him and to come back and work for him as she had been and he would see she was well paid for it when he died.  After her return a number of witnesses testify to hearing declarations of the Snowballs to the effect that she was to be remunerated.  One witness heard Mrs. Snow-

ball tell her just before Snowball's death that "she would see her paid for her trouble in that sickness of his." Another witness heard both Snowballs say six or seven years ago they were going to reward her for what she was doing. There is testimony of other witnesses of like declarations tending to corroborate the evidence of the promise testified to by the brother of the conversation between Mr. Snowball and appellee when they went to St. Louis to get her to return.

A number of disinterested witnesses testify to admissions of appellee which contradict the claim that she was to be paid for the services rendered by her after her return from St. Louis and prior to her marriage in 1900 when the Snowballs died.

Patrick Tierney states that after her return from St. Louis she told him she was receiving $10 per month after her return for her work. Mrs. Gray states that just after she returned from St. Louis she told her she was receiving $10 per month. Mrs. Hayes testified she told her often and just before she was married she was getting $10 per month.

Another witness, Kate Crane, a distant relative of the granddaughter, Nellie Snowball, states that after the funeral of Mr. Snowball appellee told her that when she came back from St. Louis the Snowballs promised her $10 per month if she would come back and they had paid her that wage since she returned. Nellie Snowball testified to the like admissions. Appellee contradicts all such statements.

Verbal admissions should be received with great caution. They are frequently unreliable and entitled to little weight and are subject to imperfection and mistake. Bragg v. Geddes et al., 93 Ill. 39; Corder v. Corder, 124 *id.* 229. And this is especially so of admissions of a person since deceased. Laurence v. Laurence, 164 *id.* 367.

The evidence of the promise to pay and the payment of wages depend on both sides upon alleged admissions subject to the same imperfections and we are

of opinion that weighing it by the same standard, the weight of the evidence was that she was paid the sum of $10 per month.

Appellee married in 1900 and left the Snowballs and never thereafter lived in the house but lived elsewhere with her husband. True she did many things for them but she at the same time kept her own household and during some of this time the Snowballs employed help and Mrs. Snowball did some of her own work. Appellee and her husband during all the time from 1902 or 1903 when they moved into the tenement of the Snowballs, occupied it and there is no evidence they paid any rent and during this time the testimony is very indefinite as to what appellee did for them.

If appellee is entitled to compensation and has not been paid for her services, she should be paid a reasonable compensation for services not barred by limitations for what competent evidence shows she did, deducting whatever she may owe the estate or has been paid, but the evidence before us does not support the judgment for $4,500. It is manifestly excessive and against the weight of the evidence and the court erred in refusing to award a new trial.

There was also error in admitting the evidence of appellee's husband of the conversation between his wife and other witnesses. The testimony was incompetent.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*