### ISRAEL v. BAKER.
No. 3650.

United States Court of Appeals
Tenth Circuit.

Nov. 9, 1948.

Rehearing Denied Jan. 7, 1949.

W. J. Williams and J. E. Williams, both of Ardmore, Okl. (E. H. Williams, of Ardmore, Okl., on the brief), for appellants.

Wm. G. Davisson, of Ardmore, Okl. (Wm. L. Anderson, of Ringling, Okl. on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Jessie Israel, herein referred to as appellant, instituted this action in the United States District Court for the Eastern District of Oklahoma, against Wilma Edwards Baker, as administratrix of the estate of Francis M. Edwards, deceased, for services rendered to the deceased during his lifetime. Francis M. Edwards was a doctor and reference wherever necessary will be made to him as such throughout this opinion.

In her complaint, appellant alleged that on or about January 1, 1916, she entered the employ of Dr. Edwards and remained in such employment continuously from that date until the date of his death, December 31, 1946; that in the course of such employment she was required to perform the duties of housekeeper, nurse for his infant daughter, conduct a drug store, assist in the collection of his accounts, and the management of his property, and to perform any and all duties required of her by the Doctor. The complaint alleged that the Doctor did not pay her for any of such services, but as consideration therefor, he contracted with her to make proper and adequate provisions for her in his will; that such services were performed at the special instance and request of Dr. Edwards with the understanding that he would adequately compensate her for the same; that she had fully and faithfully performed the services; that she had filed a claim therefor with Wilma Edwards Baker, the administratrix of his estate, which claim had been rejected and that the reasonable value of such services was $25 per week. Judgment was prayed for the total amount of the claim in the sum of $40,425. The cause was tried to the court without a jury. The claim that Dr. Edwards had agreed to make a will and compensate appellant therein was abandoned and the case was tried on the basis of quantum meruit.

The trial court found that on or about January 1, 1916, appellant, with her young daughter, moved to the house of widowed Dr. Edwards in Ringling, Oklahoma, to take care of him and his infant daughter; that her work continued without interruption, except for a period of two months, until his death December 31, 1946; that her work was not that of a housekeeper alone, but that throughout all the time she maintained a home for him and his daughter; that in addition to ordinary house work, she raised a garden, did the laundry work, marketing and other work. The trial court also found that in addition to these

services she assisted the Doctor in his professional work, attended upon office patients, dispensed medicine, kept office records and often accompanied him on his professional calls. The trial court further found that she had performed these services at the request of the Doctor and that they were accepted by him under circumstances negativing their performance as a gratuity and raising an implied promise to pay their reasonable value; that the reasonable value of plaintiff's services excepting the last five years was $18 per week, with food and lodging; and for the last five years was $22.50 per week with food and lodging, and that she had not been compensated for such services.

The trial court found that there was no evidence that plaintiff's employment was based upon a single, indivisible, general hiring, nor was such a finding warranted by the implication of the circumstances; that services of the nature rendered by appellant were usually divided, for the purpose of compensation, into weekly, monthly or, at the most, annual periods, and that weekly divisions are required by this record, and that the agreement implied from the very nature of the plaintiff's employment obligated the Doctor to pay therefor at the end of each week or each month. From this the court concluded that the statute of limitations began to run virtually upon the rendition of the services and that all of appellant's claim except for services for the last three years was barred.

We think the court erred in reaching this conclusion. No attempt was made by either side to prove a custom relating to the payment of such services, and there is not a scintilla of evidence in the record upon which such a finding could be based. If such a finding is warranted, it must be based alone on the judicial knowledge by the court of such a custom. Even if we may assume that the custom of paying for ordinary household services by the week, or at least by the month, is so universally followed that a court may be said to have judicial knowledge thereof, it would not support the finding of the court in this instance because the court specifically found that these were not the usual and ordinary household services, but that they were extraordinary and unusual services in character.

The court also erred in holding that there was no evidence that appellant's employment was based upon a single, general hiring. We think the very nature of the hiring and all surrounding circumstances and inferences support the conclusion that there was but a single hiring. The Doctor is dead and appellant's lips are sealed, but the fact remains that she came and went to work and remained in such capacity uninterruptedly and continuously for 31 years, during all of which time she was absent from her duties only two months. The services were of a continuous and overlapping character. Furthermore, there is evidence that the services were not to be paid for as they were being rendered. There is evidence in the record that Dr. Edwards was a man who contracted no bills; that he was almost "a fanatic" on the subject. The trial court however, found that the services in question had not been paid for although there was a legal obligation on his part for their payment. The court's finding that the services had not been paid for can be reconciled with the doctor's almost fanatical policy of promptly paying all bills only on the theory that he understood that payment was not expected at the time of performance and was to be deferred until the time of his death. There is also evidence in the record tending to support this view. A number of witnesses testified to conversations with Dr. Edwards concerning appellant and her services. There is testimony from witnesses to the effect that Dr. Edwards said that he was going to make provisions for appellant; that he was going to take care of her; that she had worked so hard and that he would give her a home and money to live on; that she would get her reward and would lose nothing by the hard work that she had done; that she would be taken care of, and like statements. These statements are consistent with a single, continuous hiring and with the understanding that the services were to be compensated for at the conclusion of their rendition, and they are inconsistent

with a finding that the services were to be paid for as they were being rendered.

There is a clear conflict in the authorities as to when the statute of limitations begins to run in cases where continued services are performed over a long period of time. These two rules are discussed by the Oklahoma Supreme Court in McFeeters v. Cecil, 177 Okl. 454, 60 P.2d 801. The two rules will be referred to herein as the Illinois Rule and the Kansas Rule. In the McFeeters case, the Oklahoma court points out that in Illinois, in Freeman v. Freeman, 65 Ill. 106, the Illinois court, in line with other courts, held that where there was an employment extending over a great period of time and there was no evidence of a definite agreement in regard to the period of employment or the mode or the rate of compensation, the law implies a promise to pay when the services are performed and that it matters not whether the services are continuous or intermittent, and that the statute of limitations begins to run when the services are performed. The court then points out that under the Kansas Rule, as laid down in Grisham v. Lee, 61 Kan. 533, 60 P. 312,

"If there is a single hiring, and the term of service of the employe, and also the time when his compensation shall become due, are not fixed by agreement or understanding, and the hiring and service continue without interruption or payment until the death of the employer, the employment, in the absence of evidence of a general custom or usage, may be deemed continuous, and the statute of limitations will not begin to run against a claim for compensation until the services are ended."

The Oklahoma court did not apply the Kansas Rule in the McFeeters case because the undisputed facts established that there was no continuous employment. The syllabus, however, which in Oklahoma states the law of the case, quite convincingly indicates that Oklahoma would apply the Kansas law under appropriate facts. The syllabus of the McFeeters case is as follows [177 Okl. 454, 60 P.2d 801]:

"Where services are performed under single general hiring, without express agreement as to time or measure of compensa-tion or term of employment, and continue for series of years without interruption or payment until death of employer, statute of limitation will not begin to run against claim for compensation until services are ended * * * "

As pointed out, we have here a general hiring for extraordinary services which continued uninterruptedly for 31 years under conditions, as found by the court, showing that they were not gratuitously performed and that no payment for the same had been made. There is a further lack of evidence which would support a finding as to any custom with regard to the payment of such extraordinary services as these were found to be. This alone, under the McFeeters case, would be sufficient to warrant a finding that payment was to be postponed to the date of the death of the one receiving the benefit of such services. But as pointed out, we are. of the view that there is sufficient evidence of statements by Dr. Edwards, during the years, to not only support the finding of the court that payment had not been made, but also the further finding that no payment was expected until the death of Dr. Edwards. We accordingly conclude that the trial court erred in applying the statute of limitations to any part of appellant's claim.

While no cross appeal was taken, some minor points are urged by appellee why appellant should not prevail on this appeal. Thus, it is urged that her bank account shows that during the course of her employment she received various sums at different times and that she had a few thousand dollars in her account at the time of Dr. Edward's death. This fact is urged as evidence that she was being paid as her services were being performed. The trial court correctly rejected this theory. It is also urged by appellee that the claim which was filed with her, as administratrix of the estate, is not the same claim upon which suit was filed. This was also urged upon the court below and the issue was resolved against appellee's contention, and we think correctly so. As pointed out, the complaint set up two grounds for recovery—one that the Doctor had agreed to make a will, and the other for quantum

meruit for value of the services rendered. The record shows that the issue with respect to the agreement to make a will was abandoned and withdrawn by appellant's attorney. It was not within the claim filed in the estate of the deceased and was not a part of the action.

The court correctly concluded that the claim upon which suit was predicated was presented in proper time to the administratrix and that the variance in the language of the claim as filed with her and as set out in the complaint did not change the cause of action.

The judgment of the trial court is accordingly reversed and the cause is remanded with direction to enter judgment for appellant for the value of the services as found by the trial court.

### On Petition for Rehearing.

Appellee has filed a petition for rehearing in this case. In support thereof, it is urged, among other grounds, that our opinion is not in accord with the findings of fact of the trial court. It is contended that the trial court did not find as a fact as stated in our opinion that, "the services in question had not been paid for although there was a legal obligation on his part for their payment," and, "As pointed out, we have here a general hiring for extraordinary services which continued uninterruptedly for 31 years under conditions, as found by the court, showing that they were not gratuitously performed and that no payment for the same had been made."

It is urged that the court did not make any such findings of fact but instead found that numerous payments were made by Dr. Edwards to appellant during the period of her employment. We were not unmindful of the court's findings numbered 9, 10 and 11, upon which appellee relies in large part to sustain this position. In finding Number 9, the trial court found that "plaintiff had nothing when she began working for Dr. Edwards. At the time of Dr. Edward's death she had United States Bonds costing $2625.00, a certificate of deposit for $2659.99 and on deposit with the Post Office and banks a total of $1641.75. Dr.

Edwards handled the plaintiff's finances to a large extent and deposited to her credit nearly all of the deposits made in the First National Bank of Ringling from 1929 to 1946, aggregating approximately $7800.00. The available record of the Post Office savings account, #1211, discloses a credit of either $2000.00 or $2500.00 from September 30, 1932, to April 4, 1934. No regularity in time nor amount of deposit in any of the accounts is shown, including the interest bearing account in the First National Bank of Ringling. Furthermore, a comparison of this interest bearing account with withdrawals from the plaintiff's checking account in the same bank is strongly indicative of the fact that the interest bearing account was created by withdrawals from the checking account."

There is no specific finding here by the court that any of the sums mentioned in this finding came from payments made by Dr. Edwards to appellant.

In finding Number 10, the trial court found that, "The Doctor paid an annual premium of $30.42 upon an insurance policy on plaintiff's life, the plaintiff's daughter being the named beneficiary, beginning these payments in 1930 and continuing each year until his death. He also assisted the plaintiff's daughter, Edna, by contributing to her education, in the purchase of a car, in caring for her baby and afforded her a home during World War II, in the absence of her husband. Edna, in turn, performed some services for the doctor and there was a bond of affection between them."

This finding lends some support to the contention that Dr. Edwards did pay these sums but the court concludes this finding by stating, "It is reasonable to presume that these contributions were in recognition of the ties existing and the services performed and *there is no evidence that any of these gratuities were payments to the plaintiff for services rendered."* [1]

In finding Number 11, the court found as a fact which is not disputed by the record that "plaintiff did receive, as her separate fund, her share of the fees for assisting in confinement cases, money earned from

---

[1] Emphasis supplied.

the gathering of pecans, earnings from outside washing and ironing, some sums from assisting in administering vaccinations, when a large number of persons was vaccinated, and certain other sums, the total of which amounted to a substantial sum. These separate funds account, in a large measure, for the plaintiff's savings and deposits."

In finding Number 12, the court stated that, "From these facts the Court finds that the defendant has failed to establish payment for the plaintiff's services during the period against which the bar of the statute of limitations does not operate."

The natural inference from these findings is that none of the sums mentioned therein came to appellant as payment for services rendered by her under her contract of employment, and this is the construction we placed thereon and we are not ready to say that we erred in reaching this conclusion.

It is, however, urged that the concluding sentences in findings 11 and 12 that, "Any excess is not sufficient to offset the value of plaintiff's services over the long years amounting to not less than $30,000.00" and that, "From these facts the Court finds that the defendant has failed to establish payment for the plaintiff's services during the period against which the bar of the statute of limitations does not operate," are inconsistent with such a construction. Considered apart from their natural setting in the entire findings, they lend some support to such an argument, but considered in their natural setting in the findings, we cannot say that they require the conclusion that the trial court found that payments for wages had been made and received under the contract of employment.

Since the judgment must, however, in any event, be reversed and the cause be remanded to the trial court for further consideration, no harm can be done to the rights of any of the parties and proper judicial administration of litigation may best be served by giving the trial court an opportunity to clarify its findings with respect to whether any of these funds were paid and received as compensation for services rendered under her contract of employment.

The petition for rehearing is denied. The concluding paragraph of the opinion and judgment of the court as now on file is, however, modified to read as follows: "The judgment of the trial court is accordingly reversed and the cause is remanded for further consideration, limited to the question of whether any payments had been made as consideration to appellant under the terms of her contract of employment, and to enter judgment for appellant for the value of the services as thus found by the trial court."