(70 App. Div. 127.)

### LEAHY v. CAMPBELL.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

1. SERVICES AND DISBURSEMENTS—ACCOUNT—LIMITATION.
    Code Civ. Proc. § 386, providing that, in an action upon a "mutual, open and current account," the cause of action shall be deemed to have accrued from the time of the last item on either side, does not authorize a recovery for services and disbursements more than six years before the commencement of the action, where there was no evidence of any payments made nor proof of any account kept or rendered for such services and disbursements.

2. CLAIMS AGAINST DECEDENT—COMMENCEMENT OF ACTION — ENTRY OF ORDER
OF REFERENCE.
   On presentation of a claim against a decedent's estate, the entry of an
   order of reference is the commencement of an action for the purpose
   of determining the period of limitation.

3. SAME—SERVICES—PAYMENT BY WILL.
   Where services are rendered and disbursements made under an agree-
   ment that the party receiving the benefit shall make compensation by
   will, and the party dies without making the will, the person rendering
   the services and making the disbursements is entitled to be paid out
   of the estate of the deceased, as a creditor, for their value.

4. PAYMENT OF SERVICES BY WILL—BREACH—LIMITATIONS.
   Where there is an unrepudiated contract to pay for services by will,
   a breach thereof occurs when the person dies without making the will,
   and limitation on a recovery for such services runs from that time.

5. SAME—PROMISE TO PAY BY WILL—EVIDENCE—SUFFICIENCY.
   A servant rendered services and made disbursements under a claim
   that the compensation should be by will. The person receiving the
   services was unmarried, and had no relatives, except a young man
   with whom he had no intimacy. He declared that such relative would
   not get his property, but that the servant would receive it; that the
   servant was the only boy he had, and that the property should pass to
   him. He frequently stated to the servant that the property would be
   his some day. He made similar statements to other persons. *Held*, that
   the evidence warranted a finding that such person promised to pay for
   the services by making a will in favor of the servant.

6. SAME—VALUE OF SERVICES—ADMISSION OF INCOMPETENT EVIDENCE.
   Where a servant, without objection, introduced evidence to show that
   he was obliged to hire a clerk for his own business. the employer, on
   appeal, cannot claim that the evidence is no proof of the value of the
   services.
   Van Brunt, P. J., dissenting.

Appeal from judgment on report of referee.

Action by Stephen F. Leahy against Henry Campbell, as administrator of the estate of Thomas S. Clarke, deceased. Judgment for
plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH
LIN, O'BRIEN, and LAUGHLIN, JJ.

L. J. Morrison, for appellant.
Thomas Cooper Byrnes, for respondent.

LAUGHLIN, J. The respondent presented a claim for $15,000
for "work, labor, and services caring for property, looking after the
repairs, collecting the rents, keeping the accounts, and performing such
duties as required of an agent, collector, manager, supervisor, and
bookkeeper in the various transactions, business and personal requirements, of Thomas S. Clarke, and for disbursements made for and on
account of Thomas S. Clarke, and at his request, * * * from
January 1st, 1889, to July, 1900." The referee found that the services
were rendered from the 3d day of January, 1889, when the respondent
was thirty-four, and the decedent fifty-seven, years of age, until decedent died on the 21st day of July, 1900, covering a period of 11
years, 1 month, and 18 days; that the respondent "became, at said
Clarke's request, his business representative, confidential agent, and
companion; said Leahy's general duties were to look after and care

for the real property of said Clarke, secure tenants, collect rents, make and attend to the making of repairs, select and purchase materials, pay bills, collect bills, and to wait upon and attend to the interests and wants of said Clarke, and to accompany said Clarke from place to place during the day or night, on Sundays and holidays as well as week days, on business and pleasure. That the relationship between said Clarke and said Leahy became from the start, and continued, and was at all times, intimate, and one of mutual trust and confidence, viewed and described by said Clarke to his associates and acquaintances as faithful, devoted, and honest, and considered as that of 'father and son'; and the duties of said service and employment were exacting, and well performed, and called for and required of said Leahy nearly all of his time and thought." These findings are fairly sustained by the evidence. The referee allowed the claim in full, including services and disbursements for the entire period.

The first question to be considered arises on the objection that the statute of limitations is a bar to the recovery for any services rendered or disbursements made more than six years prior to decedent's death. There was no evidence of any payment made by decedent to the respondent, nor was there proof that an account was kept by respondent or rendered to decedent. There was therefore no "mutual, open and current account where there have been reciprocal demands between the parties," within the contemplation of section 386 of the Code of Civil Procedure, which provides, in effect, that the statute of limitations only runs in such case from the date of the last item proved on either side of the account. Adams v. Olin, 140 N. Y. 150, 35 N. E. 448; Green v. Disbrow, 79 N. Y. 1, 35 Am. Rep. 496; Ross v. Ross, 6 Hun, 80. In claims of this character which are litigated without formal pleadings, the entry of the order of reference is deemed the date of the commencement of the action for the purpose of the application of the statute of limitations (Hultslander v. Thompson, 5 Hun, 348), and the objection that the statute has run against the claim may be presented on the trial when the ground therefor first appears from evidence offered or received (Covey v. Covey, 64 Hun, 540, 19 N. Y. Supp. 487). The appellant upon the trial timely interposed the defense of the statute of limitations.

It does not satisfactorily appear that the respondent was related to the decedent, and there is no presumption from the facts and circumstances shown that the services were rendered, or disbursements made, gratuitously. The law would, therefore, imply a promise on the part of the decedent, not only to reimburse respondent for the moneys expended, but to pay the reasonable value of his services. Wiley v. Goodsell, 3 App. Div. 452, 38 N. Y. Supp. 376; Woodward v. Bugsbee, 2 Hun, 129; Markey v. Brewster, 10 Hun, 16; Davis v. Gallagher, 55 Hun, 593, 9 N. Y. Supp. 11; Clark v. Bradley (Sup.) 20 N. Y. Supp. 452; Smith v. Railroad Co., 102 N. Y. 190, 6 N. E. 397. This, however, would only justify the recovery for services rendered and disbursements made within the six years immediately preceding decedent's death.

The referee also found that the decedent agreed to compensate the respondent for such services and disbursements by leaving to respond-

ent all his property, both real and personal, but that the death of said Clarke was sudden and unexpected, and on that account he failed to perform this agreement. If the respondent rendered services and disbursed moneys upon the faith of such an agreement, he is entitled to recover of the estate on a quantum meruit, the provision for compensation not having been made as agreed. Gall v. Gall, 27 App. Div. 173, 50 N. Y. Supp. 563; Collier v. Rutledge, 136 N. Y. 621, 32 N. E. 626; Porter v. Dunn, 131 N. Y. 314, 30 N. E. 122; Robinson v. Raynor, 28 N. Y. 494. According to the agreement, as found by the referee, there was no obligation to pay until after the death of the employer. Inasmuch as he never repudiated the agreement, there was no breach of contract until he died without having performed it, and the cause of action for services did not accrue until that time. In such case, the statute of limitations is not a bar, and the employé may recover for all services rendered and disbursements made on the faith of the agreement prior to a breach thereof. Taylor v. Welsh, 92 Hun, 272, 36 N. Y. Supp. 952; Quackenbush v. Ehle, 5 Barb. 469; Robinson v. Raynor, supra; Bonesteel v. Van Etten, 20 Hun, 468.

The point is also made that the evidence is insufficient to sustain this finding of the referee to the effect that the decedent agreed to compensate respondent by will. We are unable to agree with the appellant's contention in this regard. The decedent died intestate, leaving real estate of the value of $22,000, and personal property of the value of $16,000. He was 68 years of age, unmarried, and left no father, mother, brother, or sister. The only relative he had in this country was a young man named Gallagher, and their relationship is not shown. There is no evidence of any intimacy between him and Gallagher, and on one occasion, when a friend suggested that he supposed decedent would leave all his property to Gallagher, the decedent replied, "No, I will have to take care of Steve," meaning the respondent; that respondent was faithful and honest, had worked for him long, had attended to his business affairs since 1889, that "he was the only boy he had, and he intended to give him all the property he had." It appears by the uncontradicted testimony of the respondent, which was received without objection, and is substantially corroborated by the testimony of other witnesses, that from 1889 he devoted his entire time to looking after the property and business and personal affairs of decedent, and to affording him companionship; that decedent owned four parcels of improved real estate in the city of New York, and respondent collected and paid over to decedent, without deduction for services, commissions, or disbursements, rents aggregating, for the entire period, $27,135; that he supervised the care and repair of the buildings on these premises, and personally made repairs thereon, and in so doing expended from time to time thereon during this entire period his own money to the extent of $4,140.71. Evidence was given by disinterested witnesses to the effect that the decedent and respondent were very intimate, constantly together both day and night, and Sundays and holidays; that the former looked upon the latter as his son; that on one occasion, in speak-

ing of respondent, the decedent said, "The only one I am working for is Steve." He spoke to another personal friend of the respondent's having been his faithful servant for a number of years, taking care of him and his property, and that, while he had not prepared himself for departing from this world, he said that he intended not to forget "his son." He frequently said to respondent in the presence of a personal friend, when talking about the expenditures made by respondent on his property, "You are only paying it for yourself, Steve; of course that will be yours some day"; and within two weeks of his death, while suffering from rheumatism, he said to the same friend that if he could get out the next day "he would see that Leahy was righted before anything happened." He told another friend on more than one occasion, speaking of respondent doing work upon his premises, "I do not know how much he pays for it, and it will all be his some day." Another witness, to whom decedent spoke of some trouble the respondent had with one parcel of property, testified that decedent said "that he was glad that he did not have anything to do with it. He said that Steve would be paid for it when he was gone; that that was the way that he was going to pay him." Within a month of his death, decedent said to another personal friend that respondent was spending too much money on one of the buildings, but that he was spending it for himself; that "he is my boy, he can do as he likes; he can have everything I have got." The respondent's brother testified that the decedent many times remarked to him that no one was to get any part of his property except respondent. Another witness testified that when the respondent was only 19 years of age the decedent told her that he intended "to fix him if he was a good boy."

The decedent was guilty of no affirmative act repudiating his obligations to the respondent, and, as has been seen, he constantly recognized them, and, when admonished of his failure to perform by illness shortly before his death, he then declared his intention to keep his agreement. It is true there is no express evidence of an agreement between the decedent and the respondent by which the latter was to render these services and make these disbursements in consideration of receiving the decedent's entire estate at his death. It is not, however, essential that the agreement be established by direct testimony. It is sufficient if the conduct of the parties and the facts and circumstances clearly indicate that such an agreement was made. Such, we think, is the inference to be drawn from the testimony given in this case. It is not reasonable to suppose that the respondent would disburse his own money in large amounts in making improvements on the decedent's property, and devote his entire time to the decedent's business, while at the same time collecting rents and paying the same over to decedent, without deduction on account either of disbursements or services, unless there was some agreement or understanding that reimbursement and adequate compensation were to be made in some manner in the future. The reasonable inference is that the respondent expected that the property would be his upon the death of the decedent. Of course, the conduct of the respondent could not establish his claim; but

his conduct, taken in connection with the attitude of the decedent toward him, and the conversation between them in which decedent said in substance that respondent was improving the property for himself, and that some day it would be his, and the other declarations of the decedent concerning his intentions, we think fairly justify the inference that the services were rendered and the disbursements made upon an agreement and understanding between the respondent and the decedent to the effect that the former was to receive all the property—at least, all of the real property—of the latter at the time of his death.

If these views are sound, we do not understand that it is seriously contended that the amount of the judgment was not justified. The services rendered were given in detail, but there was no direct express evidence as to their value. The difficulty of proving the value of such services was commented on by the court in Gall v. Gall, supra, where a hypothetical question to witnesses not familiar with the value of all the items of the services was sustained. In this case, no expert testimony was given, but it was proved, without objection or exception, that the respondent was obliged to hire a clerk at an expenditure of $2.50 a day to look after his butcher business during this entire time, to enable him to devote his time and attention to the decedent and his business. While this evidence would have been incompetent if objected to, yet, it having been received without objection, the appellant cannot now be heard to claim that it is no proof of the value of respondent's services. It could have been received in evidence for no other purpose than to show the value of such services; and, having been received for that purpose without objection, the respondent may have been misled into omitting to make other proof. It was further shown that the usual commission on the collection of rents was 5 per cent. If the respondent were allowed commissions on the collections and for disbursements in employing a clerk, his claim would have considerably exceeded the amount allowed by the referee. In Gall v. Gall, supra, the court held that in estimating the value of services in this class of cases the position and standing of the parties, the circumstances under which the services were rendered, the amount of property owned by the decedent, and the estimate placed by the decedent upon the value of the services, were all important, and should be considered. We are impressed with the justice of this claim, and with the fairness of the conduct of the respondent, and are satisfied that the recovery is not excessive.

Our conclusion is, therefore, that the decision of the referee was correct, and the judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.

VAN BRUNT, P. J. I dissent. I do not think that there was any proof of any agreement to make a will. Much stress is laid upon the fact that there was no proof of a repudiation of such an agreement. But as there is no proof that the deceased ever heard of any claim that there was such an agreement, there does not seem to have been a very pressing necessity for repudiation.