### POTTS v. VILLAGE OF HAVERSTRAW.
### No. 91.

Circuit Court of Appeals, Second Circuit.
Dec. 13, 1937.

Kellogg, Emery & Inness-Brown, of New York City (David Paine and Harold Kronig, both of New York City, of counsel), for appellant.

Ernest W. Hofstatter, of Nyack, N. Y. (Monroe J. Cahn, and Alfred S. Schechter, both of White Plains, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, dismissing an amended complaint in an action in contract, upon motion of the defendant under subdivision 6 of Rule 107

of the New York Rules of Civil Practice, on the ground that the "cause of action did not accrue within the time limited by law for the commencement of an action thereon." The case has already been before this court; it was tried to a jury which rendered a verdict for the plaintiff on which a judgment was entered, which we reversed in Potts v. Haverstraw, 79 F.2d 102. The original complaint was laid upon a contract made on July 2, 1928, between the plaintiff, a civil engineer, and the defendant for his services in preparing and superintending the construction of some new village water works. We reversed the judgment because the board of trustees had not provided for the money necessary for the project before the contract was executed, as required by section 128-a of the New York Village Law (Consol.Laws, c. 64); but we suggested that perhaps the plaintiff might have an action on a quantum meruit. Acting on this, on June 8, 1936, he moved for leave to file an amended complaint, which was granted in August, and he filed the complaint now in question on October 10, 1936. It was in two counts; the first, for the reasonable value of his services until September 20, 1928, which had enabled the village authorities to decide whether to establish the water works; the second, for later services which enabled the board of trustees to make application to a state commission for its approval. The first count was for 1½% of the estimated cost of the construction; the second, for 3½% of the same amount. The services began on August 8, 1928, by a letter to the village water board, accompanied by an engineering report, maps, detailed plans of the various parts of the water works, proposed contracts and specifications, and other necessary information; followed on August 15th by another report, covering the cost of operation and the size of the bond issue required. The water board used these documents as the basis of its report to the village trustees on August 20th, 1928; and the trustees used them as the basis of their resolution of September 4th, proposing a bond issue, and also as the basis of the village referendum of September 20th. On August 30th the plaintiff submitted further details to the water board, and he and his assistants examined and made surveys of possible sources of supply and consulted with the village authorities; on September 27th he furnished a report to the trustees as to the probable cost of, and income from the water works; and on September 28th two sets of blue prints, and three sets of a survey map with an engineering report and detailed estimates of cost. These documents were the basis of a resolution of the trustees, authorizing a petition to the state commission for its approval, which the plaintiff prepared on October 10th, followed by a letter to the commission on January 5th, 1929. The catalogue of services ends with the plaintiff's attendance upon a hearing before the commission on February 14, 1929. Each count alleged that the plaintiff had submitted to the defendant a "bill or account" for the services in suit on April 15, 1936, in accordance with subdivision 21 of section 89 of the New York Village Law, and that the defendant had refused to pay it. The original complaint had also been in two counts; the first, upon the written contract of employment in which the plaintiff alleged that on November 7, 1929, more than thirty days before the commencement of the action, he had presented to the trustees a "bill or account" for $65.17, his expenses for blue prints, plates, etc.; the second count concerned matters not relevant here.

■ The defendant raised several objections to the amended complaint, but the only one which we need discuss is that arising under the section just cited which reads as follows: "no bill or account against the village * * * for * * * services rendered * * * shall be * * * paid, nor shall an action be brought thereon unless such bill or account shall be made out in items, and properly dated with an affidavit attached thereto by the person * * * presenting * * * the same." The defendant's argument is that since an action can only be brought after such a "bill or account" has been presented, the action at bar cannot be considered to have been brought on June 12, 1931, the date of the summons; and that since the New York statute of limitations for actions in contract is six years (section 48, subdivision 1, New York Civil Practice Act), the cause of action was already outlawed, when the plaintiff moved for leave to amend. The plaintiff answers that the cause of action in both complaints was the same, and that the period of limitation therefore ended when the writ was served. The question whether the causes of action are the same, is not however presented,

because, even though they were, and though for that reason the action stated in the amended complaint may be considered as commenced on June 21, 1931, it was commenced without presenting "the bill or account" which was a condition precedent. The "bill or account" of November 7, 1929, could not be treated as amended by that of April 15, 1936; it had nothing to do with any services whatever. On the other hand, if the cause of action in quantum meruit is to be considered as separate from that for breach of contract, although the plaintiff then complied with subdivision 21 of section 89, the action was commenced more than six years after the last service was rendered.

■ This argument seems to us unanswerable and the plaintiff can therefore recover only in case the statute did not start running at the date of the last service. It does not appear in the pleadings or the affidavits that the plaintiff's engagement ended on February 14, 1929; perhaps it did not. For example, it may turn out that the hearing on that day was not final, that the water works remained under consideration, and that the plaintiff continued to be in charge of their promotion. If so, his employment was like that of an attorney, continuous until the litigation ends, or he is discharged. In such cases the understanding is ordinarily not that he gets his pay as he goes along, but only when his work is complete, and the statute begins to run at that time. Mygatt v. Wilcox, 45 N.Y. 306, 6 Am.Rep. 90; Bathgate v. Haskin, 59 N.Y. 533; Martin v. Camp, 219 N.Y. 170, 114 N.E. 46, L.R.A. 1917F, 402. This doctrine is not, and obviously could not in reason be, confined to attorneys; it covers any employment where the employee is not to be paid de die in diem, but at the conclusion of the job, or of any one of several jobs. Leahy v. Campbell, 70 App.Div. 127, 75 N.Y.S. 72; Shafer v. Pratt, 79 App.Div. 447, 80 N.Y.S. 109; Williston, §§ 2028, 2029. Possibly the plaintiff's work for the water board and the trustee before the resolution was passed and confirmed by referendum, was so separate that he could have sued for it on September 20, 1928; the evidence is not, and cannot be, before us at this stage of the cause. In Adams v. Fort Plain Bank, 36 N.Y. 255—as it was later explained in Mygatt v. Wilcox, supra, 45 N.Y. 306, 6 Am.Rep. 90—and in Shafer v. Pratt, supra, 79 App.Div. 447, 80 N.Y.

S. 109, the plaintiff had been engaged upon several distinct jobs, and the termination of each set the time running as to it, as it should. That may turn out to be the case here; but as this record stands, we cannot say that the defense to either count was made out with the certainty required for a motion under Rule 107. Nor can we consider the defense under section 128-a of the Village Law, for the defendant must plead it in confession and avoidance. McNulty v. New York, 168 N.Y. 117, 61 N.E. 111; McGovern v. New York, 234 N.Y. 377, 138 N.E. 26, 25 A.L.R. 1442.

■ A good deal has been said about the "law of the case," as concluding the judge who dismissed the complaint. When the plaintiff moved for leave to amend, the judge who granted the motion said in his opinion that the action was barred unless the cause of action in quantum meruit "related back to the original complaint," which he thought it did not. The second judge felt himself bound by this. It is of course essential to any orderly conduct of an action or suit, that, at least unless upon the most extreme provocation, a second judge shall not vacate any order of an earlier judge. Commercial Union of America v. Anglo-South American Bank, 10 F.2d 937 (C.C.A.2). But that doctrine does not extend to every reason given by the first judge for what he did; and it is apparent on reflection that that could not be true, as the case at bar well illustrates. We cannot reverse the judgment dismissing the action, unless the judge who entered it committed some error. But if he was bound to follow what the earlier judge said, he committed no error, and we could reverse the judgment only in case the action of the earlier judge were also before us. Earlier orders, judgments and decrees will indeed be reviewed upon appeal from a final judgment. Fitzpatrick v. Flannagan, 106 U.S. 648, 660, 1 S.Ct. 369, 27 L.Ed. 211; Bauserman v. Blunt, 147 U.S. 647, 652, 13 S.Ct. 466, 37 L.Ed. 316; Singer Sewing Machine Co. of N. J. v. Benedict, 179 F. 628 (C.C.A.8); United Copper Securities v. Amalgamated Copper Co., 232 F. 574 (C.C.A.2); King v. Hiawatha Silk Mills, 296 F. 907 (C.C. A.2). But the plaintiff could not secure a modification of what the earlier judge said in granting leave to amend; and he could not review his order because it was in his favor. The consequence of such reasoning would be that the final judgment

must stand, although it was based upon an erroneous ruling, because that ruling cannot be reviewed. Obviously, that is an absurd result; yet it can be avoided only in case it was not the duty of the second judge to follow the opinion of the earlier judge. He was under no such duty, his duty was merely not to nullify any preceding order in the case; and if he had denied the motion to dismiss, he would not have impaired the effect of the order granting leave to amend.

Judgment reversed; cause remanded.