JOSEPH CZELUSNIAK *vs.* TADEUSZ OSSOLINSKI & others.

Hampden.    November 6, 1930. — December 2, 1930.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Contract,* Construction.    *Limitations, Statute of.    Equity Jurisdiction,*
Laches.

Five children of a man mutually agreed among themselves and with
the man's son-in-law that each of them would contribute one fifth of
the expense of supporting the man in the house of the son-in-law.   The
agreement did not provide for any specific sum which each of the
children should pay to the son-in-law, nor the amount of such expense,
nor the length of time the man should remain in the house of the son-
in-law, nor any times, periodical or otherwise, at which the children
should make their payments.   The man thereafter lived in the house
of the son-in-law for more than fourteen years.   No payment to the
son-in-law was made during that period by any of the children.   Be-
tween the tenth and the fourteenth year, the son-in-law made demands
upon the children.   At the expiration of the fourteen years he brought
a suit in equity against three of them, seeking to recover from each
of the defendants one fifth of the expense of supporting the man and
to reach and apply certain property of the defendants to the satis-
faction of his claims.   The pleadings did not set up the statute of
limitations as a defence.   It was found that the plaintiff was not guilty
of laches and that the man still was being supported by him.   A final
decree was entered ordering each of the defendants to pay one fifth of
the expense for the period beginning six years previous to the com-
mencement of the suit.   On appeal by the plaintiff, it was *held,* that

(1) Although the parties did not contemplate that the plaintiff
should be required to wait for the defendants' contributions until he
had ceased to support the man or until the agreement was terminated
otherwise, and payments from the defendants would have become due
upon demand by the plaintiff from time to time during the period of
the man's support, the plaintiff was not required to make demand
previous to the termination of the agreement;

(2) The suit having been commenced seasonably after demand, the
statute of limitations would not have been a bar to recovery by the
plaintiff of any part of the expense, even if it had been pleaded by the
defendants;

(3) The plaintiff was not guilty of laches as a matter of law;

(4) The decree was modified by adding to the amount to be paid
by each defendant one fifth of the expense of support for the first eight
years.

BILL IN EQUITY, filed in the Superior Court on September
25, 1928.

The suit was referred to a master. The pleadings, material facts found by the master and findings and rulings by *Broadhurst,* J., are described in the opinion. By order of the judge, there were entered an interlocutory decree confirming the master's report, and a final decree described in the opinion. The plaintiff appealed.

*J. E. Kerigan,* for the plaintiff, submitted a brief.

No argument nor brief for the defendants.

FIELD, J. Paul, otherwise Pawel, Ossolinski in 1914, then approximately seventy-two years old, lived in Poland, his native country. He had five children in the United States, three sons, Leopold, Tadeusz and Matthew, otherwise Mieczyslaw, and two daughters, Bertha A., wife of Joseph Czelusniak, the plaintiff, and Helena, otherwise Anniela, Zobecki. Arrangements were made, which need not be described in detail, for Paul Ossolinski to come to the United States. He came, and was admitted, to this country in 1914. He arrived in Springfield on July 21, was met by his five children, and was taken to the home of the plaintiff and his wife where the children of Paul and the husband of his daughter Anniela also lived as members of the household. As a condition of his admission " this government required a writing in the general nature of a bond, signed by two citizens of America, of financial responsibility, in substance agreeing to protect the government against . . . Paul Ossolinski becoming a public charge." The plaintiff " not only signed and delivered " such a writing, " but obtained the signature of another citizen thereto who met the same requirements as to financial responsibility." Paul Ossolinski continued to live in the plaintiff's household and to be supported by the plaintiff to the time of the beginning of the hearings in this case.

The plaintiff brought this bill in equity against Tadeusz Ossolinski, and his wife, Mary, Matthew Ossolinski, and his wife, Helena, Anniela Zobecki and the Chicopee Savings Bank to determine the amounts due to the plaintiff from the defendants Tadeusz and Matthew Ossolinski, and Anniela Zobecki, for the support of their father, to compel

the payment thereof, and to enjoin the transfer or encumbering of certain real estate alleged to be owned by the defendant Tadeusz, standing in the name of his wife, and certain real estate alleged to be owned by the defendant Matthew, standing in his name and that of his wife jointly, and any other real estate within the county standing in their names, and the withdrawal, transfer or encumbering of moneys standing in the name of the defendant Anniela in the defendant Chicopee Savings Bank. The bill was filed September 25, 1928. The case was referred to a master who held hearings, beginning August 15, 1929, and made a report which was confirmed by an interlocutory decree. The evidence is not reported, and it is not now contended that the report of the master is in any respect erroneous. The judge made findings and rulings based on the master's report to the effect that the plaintiff was " entitled to payment by each of the defendants," meaning the defendants Tadeusz and Matthew Ossolinski, and Anniela Zobecki — their brother Leopold and sister Bertha A., wife of the plaintiff, not being parties to the bill — " of one fifth of the cost to the plaintiff of supporting their father " from September 26, 1922, to August 15, 1929, with interest and costs, and, in accordance therewith, a final decree was entered, ordering the payment to the plaintiff by each of said defendants of $463.60 with interest and costs, and providing for the sale of the real estate of said Tadeusz and said Matthew and the collection of the deposits of said Anniela, if payment was not made as ordered. The plaintiff appealed from the final decree.

The only question raised by the appeal is whether, on the master's report, the plaintiff is entitled to payment by each of the defendants of his proportionate part of the cost to the plaintiff of supporting Paul Ossolinski during the entire period after July 21, 1914, or whether, on the contrary, as the judge ruled, the plaintiff cannot recover the cost to him of such support furnished more than six years before the bill was brought.

The defendants did not by demurrer, plea or answer

set up either the defence of the statute of limitations or that of laches.

The master found among other things that all of the children of Paul Ossolinski resident in Chicopee "did agree with each other and with the . . . [plaintiff] that they would contribute equally toward the expense of their father's support in the . . . [plaintiff's] household, that the . . . [plaintiff] signed and entered into the agreement required by the government . . . in reliance upon, and in consideration of these mutual promises among the said children, and . . . their several promises to the . . . [plaintiff] in this regard, and . . . that the said children agreed on such contribution in reliance upon and in consideration of the agreement to sign, and actual signing of this writing by the . . . [plaintiff] that their said father was received into the . . . [plaintiff's] household in reliance upon these promises and agreements, and that he was continuously kept by the . . . [plaintiff] in his household in reliance thereon down to the time of the beginning of hearings in this action . . . that the above mentioned children of the said Paul . . . did not agree to contribute to his support . . . in any specific, determined, and stated amount no such amount having been mentioned or agreed upon between them . . . that their agreement was confined to an equal contribution toward the expense of his support by the . . . [plaintiff] in his household," and that neither "the amount of the charge to be made for the care of their said father, nor the definite length of time he was to remain in the . . . [plaintiff's] household was mentioned, discussed, or agreed upon between them." The master expressly did not "find that the terms of the agreement for contribution to the support of the father by said . . . [defendant] children made any specific provision as to the time, periodical or otherwise, when they should make such contributions." The master made findings as to the expense to the plaintiff of supporting the father and found "that none of the . . . [defendant] children of the said Paul made any payments to or for the account of the . . . [plaintiff] under their agreement for the sup-

port of their father during the entire period of his resi-
dence in the . . . [plaintiff's] household . . . that demands
were made by or in behalf of said . . . [plaintiff] for
contributions toward such support from the . . . [defend-
ant] Matthew Ossolinski on at least two occasions, the
first about the year 1924, the second about the year 1927,"
and from the defendant Tadeusz prior to March 21, 1927,
" and that subsequent similar demands were made upon
all the . . . [defendant] children in the year 1928." The
master reported further that " In view of the close and
friendly family relationship between the . . . [plaintiff]
and his said wife on one hand, and the . . . [defendant]
children of the said Paul, on the other hand, extending
from 1914 down to 1924 or somewhere between 1924 and
1927, having in mind their respective financial circum-
stances, the demands upon each by their immediate fam-
ilies, considering also the continuing nature of the
agreement between them as to the support of their father,
their continuing obligation thereunder, by fair inference,
as long as their father was supported in the . . . [plain-
tiff's] household under conditions similar to those when
such support began, and the fact that the situation as to
the kind and extent of care given the father remained
substantially the same for a period of about ten years,
and on the entire compass of all the evidence received by
me, it does not seem to me a reasonable inference that
laches is fairly attributable to the . . . [plaintiff] for
failure to seek enforcement of the obligations of the . . .
[defendants] to him by process of law, before the com-
mencement of the proceedings at bar, and I adopt this as
my finding in that regard, so far as it is properly the sub-
ject of a finding of fact."

The judge found and ruled as follows: " Upon all the
facts reported by the master, I find as a fact, and rule as
matter of law that a valid contract was made between the
parties to this suit whereby the plaintiff, among other
things, agreed to furnish a home and support to Paul
Ossolinski, the father of the defendants, as long as the
plaintiff and Paul desired to continue the arrangement,

and that the defendants should each pay the plaintiff one fifth of the cost of that support so long as it was furnished. Paul's residence in the plaintiff's household, and receipt of support from the plaintiff was an arrangement terminable at the will of either party. It is not fatal to the validity of the contract between the parties, that there was no agreement as to how long the plaintiff should support Paul, or as to any basic unit of time and for money, upon which might be calculated the amount the plaintiff was entitled to be paid by the defendants. On the other hand, it was not contemplated by the parties that the plaintiff should not be entitled to be paid anything by the defendants until he had ceased to support the father." The judge ruled that the plaintiff " could have demanded, and if necessary sued the defendants for their share of the costs of supporting Paul, from time to time while the support continued;" but " Having failed to make demand on any defendant until some time in 1924, the plaintiff is not entitled to recover in this suit from any defendant for support furnished more than six years prior to the filing of the plaintiff's bill."

We pass without intimation of opinion the question whether in the state of the pleadings it was open to the trial judge to consider the defences of the statute of limitations and laches, for we think that, even if these defences were open for his consideration, as matter of substantive law neither of them bars recovery by the plaintiff of the cost to him of the support of Paul Ossolinski furnished more than six years before this bill was brought.

The trial judge found and ruled correctly, upon the facts found by the master, that the defendants Matthew and Tadeusz Ossolinski, and Anniela Zobecki, were bound by contract to contribute to the plaintiff toward the cost of supporting their father. Though the plaintiff sues in equity to compel such contribution, as these defendants' obligations are legal the general statute of limitations applies. *O'Brien* v. *O'Brien,* 238 Mass. 403, 411. There was no express provision in the agreement between the parties

for contributions by these defendants from time to time, at fixed dates, towards expenses previously incurred by the plaintiff for the support of their father and no ground for such an implication in any " basic unit of time and . . . money." Consequently, there were no fixed due dates at which the statute of limitations began to run against actions to recover amounts thus payable, as in the case of an instalment contract. See Williston on Contracts, § 2024. We think it inferable from the master's findings that, as the judge found, " it was not contemplated by the parties that the plaintiff should not be entitled to be paid anything by the defendants until he had ceased to support the father." Payments from time to time during the continuance of the contract, however, became due only on demand by the plaintiff. The judge ruled correctly that the plaintiff " could have demanded, and . . . sued the defendants " Matthew and Tadeusz Ossolinski, and Anniela Zobecki, " for their share of the cost of supporting . . . [their father] from time to time while the support continued." But we find nothing in the agreement which by implication required the plaintiff to demand any payment before the termination of the contract. The implied provision for earlier payments was for his benefit. He could have treated the contract as entire. In the case of such a contract the statute of limitations does not begin to run until full performance by the plaintiff or termination of the contract otherwise. *Hall* v. *Wood,* 9 Gray, 60. *Eliot* v. *Lawton,* 7 Allen, 274. It follows that, as this suit was brought seasonably after demand, the statute of limitations had not run with respect to any of the expenses incurred by the plaintiff in supporting Paul Ossolinski. The rule requiring demand within a reasonable time, meaning, ordinarily, in the absence of anything to indicate " an expectation that a demand is to be made quickly, or that there is to be delay in making it, . . . the time limited for bringing such an action after the cause of action accrues," (*Campbell* v. *Whoriskey,* 170 Mass. 63, 67, *Whitney* v. *Cheshire Railroad,* 210 Mass. 263, 268,) does not lead to the contrary result. See *Downer* v. *Squire,* 186 Mass. 189, 201–202.

Since the plaintiff's cause of action did not necessarily accrue until the termination of the contract, demand at any time before such termination was not unreasonably delayed. The same considerations dispose of the defence of laches, even apart from the master's finding that so far as the matter was one of fact there was no laches.

The decree is to be modified by including in the amounts due from each of the defendants Matthew and Tadeusz Ossolinski, and Anniela Zobecki one fifth of the cost to the plaintiff of supporting their father from July 21, 1914, to September 26, 1922, as found by the master, and by computing interest to the date of the decree after rescript and, so modified, is affirmed with costs.

*Ordered accordingly.*