THEODORE L. MURRAY v. W. H. GRISSIM.
—290 S. W. (2d) 888.

Middle Section. January 6, 1956.

Petition for Certiorari denied by Supreme Court, June 8, 1956.

Goodpasture, Carpenter & Dale, Nashville, for Theodore L. Murray.

R. T. Cochran and Ned Lentz, Nashville, for W. H. Grissim.

FELTS, J. This action was brought December 15, 1953, by plaintiff below, Grissim, to recover for services rendered by him to Defendant Murray as manager of defendant's farm during the period from March 1941 to August 1952. Defendant pleaded the general issue of *nil debet* and a special plea of the statute of limitations of six years, Code sec. 8600. Plaintiff joined issue on the special plea.

Upon the trial of these issues, the jury returned a general verdict for plaintiff for "$13,600.00, less a credit of $2,500.00 [the balance owing by plaintiff on a note to defendant, as stated in his declaration], leaving a net of $11,100.00". The Trial Judge approved the verdict and entered judgment thereon for plaintiff for $11,100 and costs.

Defendant Murray appealed in error and has assigned a number of errors. By his first assignment, he insists that the Trial Judge should have directed a verdict for him, because there was no evidence to support a verdict for plaintiff. In considering this assignment, we must, of course, take the strongest legitimate view of the

evidence to uphold the verdict. Walton & Co. v. Burchel, 121 Tenn. 715, 121 S. W. 391; Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 277, S. W. 2.

Evidence for plaintiff was that the Murray farm was located on the Franklin pike some fifteen miles south of Nashville. It consisted of 296 acres and was used for operating a dairy, growing hay and other crops, and raising livestock. It was given to defendant by the will of his father, Faye Murray, who died in March 1941. It was left in a trust for him until 1950, but the trustee leased it or turned it over to him and he had charge of it from March 1941 until August 1952, when he sold it for $175,000.

Faye Murray for many years was a part owner of Kennett-Murray Company, a concern engaged in the livestock business at the Nashville stockyards. Plaintiff was engaged in similar business there, and had had experience in operating farms. He had been aided in his business by Faye Murray, they were close friends, and he managed this farm for Faye Murray, without charge, from 1935 until Faye Murray's death in 1941.

He had had no dealings with defendant and did not know him. Though reared on this farm, defendant was away much of the time, in Florida in the winters and at summer resorts in the summers, and had had no experience in operating a farm. When he took charge of this farm, he requested plaintiff to continue managing it. This request, plaintiff testified, was made by defendant and by his bookkeeper Flanagan. Neither of them denied this, each merely saying he did not recall making such request.

There was, however, no conversation or express agreement or understanding between them as to what was to be paid plaintiff for managing the farm, but he expected to be paid what was reasonable for his services and expected such payment to be made when the farm was sold or the services were terminated. Upon this request of defendant, plaintiff managed this farm for him from March 1941 until he sold it in August 1952.

■ From the mere rendering of such services by one and their acceptance by another, the law, without regard to the other's intent, will ordinarily raise a quasi contract on his part to pay the reasonable value of such services; or the circumstances may warrant the triers of fact in finding an implied promise or contract on his part to pay such value. 1 Williston, Contracts (rev. Ed. 1936), secs. 3, 36, 91; Rest., Contracts, secs. 5, 72.

■ ■ While a contract (offer and acceptance) is usually expressed in words, it may be implied from conduct. In such case the intention of the parties is a matter of inference from their conduct. Any conduct by one from which the other reasonably infers a promise in return for a requested act or promise amounts to an offer. Anson's Law of Contract (18th ed.—1937) p. 14; 1 Williston, Contracts, (rev. ed. 1936) sec. 36.

These authors, Sir William Anson and Professor Williston, illustrate this principle thus:

> "If A allows X to work for him under such circumstances that no reasonable man would suppose that X means to do the work for nothing, A will be liable to pay for it. The doing of the work is the offer, the permission to do it, or the acquiescence in its being done constitutes the acceptance." (Anson's Law of Contract, 18th ed. 1937) p. 14.

"* * * The common illustration of this principle is where performance of work or services is requested. If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of work. And even though no request is made for the performance of work or service, if it is known that it is being rendered with the expectation of pay, the person benefited is liable" (1 Williston, Contracts, rev. ed. 1936, sec. 36).

■■ Upon the evidence, we think the jury could well find that defendant requested plaintiff's services, not as a favor but under such circumstances that a reasonable person would infer that he meant to pay for them; that plaintiff did understand that defendant would pay him the reasonable value of such services when they were terminated or the farm was sold; and that defendant became liable upon an implied contract to make such payment.

It is urged for defendant, however, that plaintiff's services during this period of over eleven years were rendered to him gratuitously or as a favor. While he did not say he requested such services as a favor, he did say he "more or less inherited him [plaintiff] with the farm"; and he contends that after his father's death plaintiff merely continued to manage the farm in the same way and to render the same gratuitous services as before.

But there was a marked change in the circumstances. The close relation of plaintiff to the father ended with the father's death. Plaintiff was no kin to defendant, did not know him, and their relation was hardly more than that of strangers. So, it was a question for the jury whether plaintiff's services to defendant were rendered gratuitously or were rendered under an implied promise of defendant to pay for them. This question was fairly submitted on a proper charge, and we must take the jury's verdict as settling the matter.

It is also argued for defendant that he and plaintiff were partners in the race horse business; that the main reason for plaintiff coming to defendant's farm was to look after the horses of this partnership; that the evidence does not show what services plaintiff rendered to the partnership or what services he rendered as manager of the farm, but leaves the amount and value of such services as a matter of speculation and conjecture.

As before stated, plaintiff began to manage defendant's farm in 1941, some three or four years before their partnership began in 1944 or 1945. They continued to deal with each other on a strictly business basis after they became partners. Part of the partnership horses were kept on defendant's farm, and part on plaintiff's farm. When defendant sold his farm, he sold his interest in the partnership horses to plaintiff for $4,000, $2,500 of which was owing when this suit was brought.

Plaintiff in his testimony described in detail his services as manager of the farm. He would go to the farm every morning about six o'clock, stay there until about eight o'clock, planning the work for the hands, and come back every afternoon about four or five o'clock, stay

until dark, supervising the work. He continued the services in the same way after the formation of the partnership, and what he did for the partnership was so much extra work over and above his services in operating the farm.

▮ It is further argued for defendant that there was no evidence of the value of plaintiff's services as manager of the farm. Plaintiff testified that he expected to be paid the reasonable value of his services when they were terminated or when the farm was sold; and he estimated such value, measured at a monthly rate, to be $200 per month for the whole period of his management; while another witness, called by plaintiff as an expert, estimated such value at $300 per month.

Defendant contends that this opinion of the expert was of no value because the hypothetical questions on which such opinion was based did not include all the facts of the case on trial. Even if this be true, there would still remain the testimony of plaintiff, which was competent and sufficient to support the verdict. Edmund M. Morgan, Basic Problems of Evidence, Vol. 2, pp. 191, 194; 71 C. J., Work and Labor, sec. 121, p. 147; McKinnon v. Michaud, 37 Tenn. App. 148, 160, 260 S. W. (2d) 721, 726.

▮ It is true the jury did not take plaintiff's estimate of the value of his services, but made their own estimate of such value at $100 per month for the period of his management of the farm. The services being fully described, the jury could form their own estimate of the value thereof, from their common sense and knowledge of such values. Craig v. Durrett, 1 J. J. Marsh., Ky., 366, 19 Am. Dec. 103.

254

■ All the rest of the defendant's assignments of error relate to his defense of the statute of limitations. They assert that the Trial Judge should have submitted this defense, and should have excluded all the evidence as to matters more than six years back, and should have instructed the jury that the statute barred all of plaintiff's claim for services rendered more than six years before this suit was brought.

The statute relied on, Code sec. 8600, provides: "* * * actions on contracts not otherwise expressly provided for, shall be commenced within six years after the cause of action accrued." So, the question is, when did this cause of action accrue so as to start the statute running? This is a question of construction, not of the statute, but of the contract or cause sued on. Did it accrue as and while the services were being rendered from month to month or year to year, as insisted by defendant? Or did it accrue only after the services had been performed and terminated, as contended by plaintiff?

The evidence shows, without dispute, that plaintiff's services were continuous and were rendered under one entire continuing contract, whether such contract be regarded as implied in fact or as implied in law. In such case, we think, the cause of action would accrue, and the statute would begin to run, only upon entire performance of the contract, or when the services were completed or terminated. 6 Williston on Contracts (rev. ed. 1938) secs. 2028, 2029; 1 Wood on Limitations (4th ed.), sec. 119c (2).

This principle has been applied in a number of instances, such as the following:

(1) In a series of usurious transactions extending over a period of many years, where the law implies a continuous contract to refund the usury exacted, the statute does not begin to run until the transactions are closed. Weatherhead v. Boyers, 15 Tenn. 545, 564; Boyers v. Boddie, 22 Ten. 666, 669; 1 Wood on Limitations (4th ed.), sec. 119b (8).

(2) Contracts to support and maintain a person are held to be continuing contracts, so that the statute does not begin to run against any part of the claim of the person furnishing the support until the contract expires by its own terms or is otherwise brought to an end. Walker v. Walker, 12 Tenn. App. 130, 140; Czelusniak v. Ossolinski, 273 Mass. 441, 173 N. E. 590.

(3) Where A orally promised to will his land to B in consideration for B's services to him during his lifetime, but died without making a will, and his promise was unenforceable under the Statutes of Frauds, the law substitutes or implies a contract to pay B the value of his services, and the statute starts to run, not as and when the services were being rendered, but when they were completed or terminated. Goodloe v. Goodloe, 116 Tenn. 252, 92 S. W. 767, 6 L. R. A., N. S., 703, 8 Ann. Cas. 112; 6 Williston on Contracts, sec. 2028; Annotation, 69 A. L. R. 14, 94.

(4) Where an attorney is employed in a case, such employment is continuous until the litigation ends, or he is discharged, and the statute runs, not as and when his services are being rendered, but from the completion of such services. Potts v. Village of Haverstraw, 2 Cir., 93 F. (2d) 506, 509, 6 Williston on Contracts, sec. 2028, p. 5692.

· "This doctrine is not, and obviously could not in reason be, confined to attorneys; it covers any employment where the employee is not to be paid *de die in diem,* but at the conclusion of the job, or of any one of several jobs." (Citing authorities.) Learned Hand, J., Potts v. Village of Haverstraw, supra.

 This rule applies to any case where continuous services are rendered under an entire contract for continuous indefinite performance, such as the case before us. The rule has been variously stated. We think a good statement of it is the following:

"Where services are continuously rendered over an extended period of time under an express or an implied contract which does not fix the term of employment nor the time when compensation shall be payable, the contract is entire and the employee's right of action accrues and the statute of limitations begins to run when, and only when, the services are fully performed or the employment otherwise terminated." (Citing authorities.) Smith, J., In re Swanson's Estate, 1950, 73 S. D. 293, 42 N. W. (2d) 228, 230.

While there is conflict in the authorities, we think this rule is supported by the better principle and by the great weight of the decisions and textbooks of recognized authority. It is supported by 1 Wood on Limitations, sec. 119c (2) ; 3 Elliott on Contracts (1913), sec. 2661, p. 799; and 6 Williston on Contracts, sec. 2029. Professor Williston says:

"And the general view is that though in an entire contract for continuous indeterminate services there is a stated or customary time of periodic payments,

the Statute is not put into operation from such periodic dates but only from the termination of the employment. In a few jurisdictions, however, it is held that the Statute begins to run on the right of compensation for each portion of the service as it is rendered'' (6 Williston on Contracts, pp. 5694, 5695).

Some of the decisions supporting this rule are: In re Swanson's Estate, supra; Israel v. Baker, 10 Cir., 172 F. (2d) 63, 7 A. L. R. (2d) 192; In re Baker's Estate, 144 Neb. 797, 14 N. W. (2d) 585, 155 A. L. R. 950; Grisham v. Lee, 61 Kan. 533, 60 P. 312; Knight v. Knight, 1892, 6 Ind. App. 268, 33 N. E. 456; Crampton v. Logan, 28 Ind. App. 405, 63 N. E. 51; Tretheway v. Green River Gorge, Inc., 17 Wash. (2d) 697, 136 P. (2d) 999; sec, numerous cases collated in the annotation in 7 A. L. R. (2d) 198-201.

Defendant cites and relies on certain North Carolina cases and also upon Taylor v. Wood, 72 Tenn. 504. With deference to the North Carolina Court, we think those cases are unsound in principle and contrary to the great weight of authority, and Taylor v. Wood was expressly overruled by our Supreme Court in Goodloe v. Goodloe, supra, 116 Tenn. 258, 92 S. W. 767.

All of the defendant's assignments of error are overruled, the judgment of the Circuit Court is affirmed, and the costs of the appeal in error are adjudged against defendant and the surety on his appeal bond.

Hickerson, J., concurs.

Shriver, J. (dissenting).

I feel compelled to disagree with my learned colleagues as to the applicability of the Statute of Limitations of six years in this case.

To refuse to apply the statute under the facts presented here is to put a premium on delay in the assertion of rights, contrary to the spirit and purpose of the law.

Admittedly plaintiff operated the Murray farm, gratuitously, for about six years before Faye Murray's death in March 1941, and no agreement as to compensation for services was entered into by defendant with him after the father's death. Hence, there was good reason for the son's assumption the plaintiff was continuing those services on the same basis that he rendered them for years, and defendant had a right to presume so unless notified to the contrary.

If plaintiff changed the arrangement, tacitly, and without an understanding, so as to be entitled to recover remuneration for his services, honesty and fairness demanded that he make this known to defendant, the son and heir of his dear departed friend and benefactor.

To continue his course for eleven years, with never a word to defendant about his expectations, and with no word from defendant about it, should have put him on notice that defendant, probably, was under a misapprehension about it. In these circumstances good faith demanded that he make known his intentions.

This is especially true in view of the fact that, during much of the time in question, plaintiff was interested jointly with defendant in the farm activities where they maintained a partnership enterprise in race horses and other things, and there was a close and confidential relationship between them.

The ability to defend by showing lack of performance or the true value of services, was hampered or maybe

lost to defendant after the lapse of years, whereas plaintiff, if it were his purpose to do so, might have preserved, remembered or manufactured evidence to sustain his claim.

The very purpose of the statute is to protect in such a case as this. In 17 R. C. L. 855, it is said:

"They (the Statutes of Limitations) were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist."

Significantly, plaintiff not only did not, during the whole eleven year period in question, mention the fact that he had changed the arrangement from that made with defendant's father, but, in closing out the partnership with defendant, plaintiff gave him his note for $4,000, dated September 1, 1952.

On this note plaintiff made payments and requested extensions which were granted, with never a word about his claim of over twenty-five thousand dollars for services which services had already terminated before the note was given.

It was not until November 17, 1953 that he finally, through his attorney, made known the fact that he had been charging for his services through the years.

It is all too evident that Mr. Grissim, after Mr. Murray's death, proceeded on the same basis that had characterized his dealings with the elder Murray. The idea of charging $200 per month, or any other sum, did not crystalize in his mind until after the eleven year period

had terminated and his services had ended. His claim was an afterthought.

If we could deal with the case on the preponderance of the evidence, or as one in equity, I do not believe plaintiff would be permitted to recover all. However, my learned colleagues have found that there is a jury question on the facts and have found sufficient evidence to support the verdict.

If we admit that this is a correct conclusion and that plaintiff's course of conduct has not estopped him from maintaining his claim, yet I feel that morally and legally plaintiff, on the facts, was under the duty of asserting claim before the six year statute of limitations expired. To do otherwise was to knowingly perpetrate a wrong which the courts ought not to condone and reward.

Plaintiff finally, at the trial, asserted that his services were worth $200 a month for the whole eleven year period.

He himself puts it on a monthly basis.

I am confident a Court of equity would have denied a recovery, at least for services performed more than six years before claim was made. Under the authorities, I think a Court of law can do likewise and should do so.

In the old case of Wells v. Caldwell, 28 Tenn. 609 it was said:

"The statute of limitations applies to cases before justices of the peace, as it would to an action in a court of record upon a like case, and therefore, the bar to a suit for work and labor, upon which debt would lie, is six years, and debt will lie whether the contract be express or implied. (Now, the statute of

limitations applies in all cases to the cause, not the form of action.)''

''Donation Cannot be Changed Into Debt. If work be done as a donation to the party benefited, it cannot afterwards be recovered on as a debt.''

In 17 R. C. L. 787 in discussing Limitation of Actions as applied to ''work, labor and services'', it is said:

''In case, however, of a hiring of services, without agreement as to term or amount of compensation, and in the absence of evidence of payments, it is declared that the law will not, under such circumstances, imply an agreement that compensation shall be postponed until the termination of the employment.''

The text further points out that, where one renders service upon a mere expectation of being remunerated as a matter of gratitude or generosity, there being no special contract as to duration of services or compensation, the statute applies from the end of each year.

In such cases the Courts give consideration to usage and custom appropriate to the kind of service in question.

I think the Court judicially knows that contracts for the conduct of farming operations are customarily from year to year.

In the case at bar, the contract had to be implied from the conduct of the parties. Another implication on top of the first must then be added that the parties intended to postpone payment to the termination of employment, if it is to escape the effect of the statute. I do not think this question was submitted to the jury. It seems to have been decided as a matter of law by the Court.

Another proposition that is applicable here is, that the contract of employment, if one is implied or found to have existed, was severable or divisible, and, if so, the statute should be applied.

In Brockett v. Pipkin, 25 Tenn. App. 1, 149 S. W. (2d) 478. In an opinion by Judge Faw, the Court deals with the Statutes of Limitations and discusses the authorities at length in applying them to facts that are similar in several particulars to those in the case at bar.

The opinion states 25 Tenn. App. at pages 7-8, 149 S. W. (2d) at page 482:

"It is apparent from a consideration of the Chancellor's findings and decree and the appellant's third and fourth assignments of error that the determinative question for decision here is whether the contract in controversy was entire or divisible, for if it was a divisible, or severable, contract, the Chancellor did not err in holding that complainant's action was barred by the statute of limitations.

" 'Where a contract is severable or divisible, breaches of its severable parts will give rise to separate causes of action accruing at different times, so that the statute of limitations will begin to run at the time of each severable breach, although not until then.' "

The Court then quotes from 12 American Jurisprudence pages 871-3 where, among other things, it is said:

" 'As a general rule, a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and

common to one another and to the consideration, *and is severable when,* in its nature and purpose, *it is susceptible of division and apportionment.* (Emphasis ours.)

" 'Another test that has been suggested is the possibility or impossibility of a certain apportionment of benefits, according to the compensation in the contract, in case of part performance only.' "

The opinion then quotes with approval from Bradford & Carson v. Montgomery Furniture Co., 115 Tenn. 610, 92 S. W. 1104, 9 L. R. A., N. S., 979, where it is said:

" ' "The distintcion between an entire and severable contract is clearly stated in the books. In the former the consideration is entire on both sides. It does not, either by its terms or the implied intention of the parties, contemplate or admit of apportionment upon a partial failure on either side; and the complete fulfillment of the contract by either is required as a condition precedent to the fulfillment of any part of the contract by the other. *A severable contract is a contract, the consideration of which by its terms is susceptible of division and apportionment.* There is, in such contract, no entirety of consideration on either side constituting a condiiton of the agreement; and neither party can claim more than an equivalent for the actual consideration on his part. Story on Con. secs. 21, 22." ' " (Emphasis ours.)

In discussing the question of severability of a contract, the opinion, Brockett v. Pipkin, quotes with approval from 17 C. J. S., Contracts, secs. 331-336, pp. 785-971, in part as follows:

" 'Another' test that has been suggested is the possibility or imposibility of a certain apportionment of benefits, according to the compensation in the contract in case of part performance only. * * * *The singleless or apportionability of the consideration appears to be the principal test.' " (Emphasis ours.) The opinion continues:

"*The principle stated in the above texts, that where the consideration of a contract is susceptible of apportionment, the contract is severable, has been approved by our Supreme Court.*" (Emphasis ours.) Citing Bradford & Carson v. Montgomery Furniture Co., supra, and Coleman v. Hudson, 34 Tenn. 463.

In Ann. Cas. 1913A, 420 (note) it is said that where an attorney is retained and paid a salary by the month or year the statute of limitations runs against each month's or year's salary. Of course where he is hired for a single unit or specific task, it does not begin to run until the suit or task is finished.

The text concludes:

"But where attorneys are regularly employed at a salary given for advice and legal superintendence and other services rendered from day to day, there is no reason why they should not stand upon the same footing as other salaried employees, so far as the statute of limitations is concerned."

For the foregoing reasons, I respectfully dissent from the majority opinion in so far as it fails to apply the statute of limitations to bar plaintiff's recovery for services performed more than six years before suit was filed.