In re ESTATE OF M. A. McCLANAHAN.

ALEX McCLANAHAN et al., Claimants,
Appellant-Appellee, v. JEAN W. JONES,
Administratrix, Appellant-Appellee.
—471 S.W.2d 555.

Western Section at Knoxville. June 21, 1971.

Certiorari Denied by Supreme Court October 4, 1971.

302

Capps & Oakley, Morristown, for claimants.

Ralph T. Noe, Jr., and Joseph L. Reed, Morristown, for administratrix.

MATHERNE, J. Alex McClanahan and wife, Ida Mae McClanahan, filed a claim against the estate of M. A. McClanahan for services rendered to M. A. McClanahan during his lifetime. The complainants averred they provided daily food, clothing, care and other personal services at the request of M. A. McClanahan, with the understanding that M. A. McClanahan would make payment to them through his Last Will and Testament which he, M. A. McClanahan, failed to do.

The Chancellor heard the cause on oral testimony without a jury and gave judgment for the complainants in the amount of $5,500.00 as the value of services rendered by them for M. A. McClanahan for a period of time six years prior to the death of M. A. McClanahan.

Jean W. Jones, Administratrix of the estate of M. A. McClanahan, appeals to this Court on the ground the Chancellor erred in sustaining the claim of the complainants for services rendered her decedent.

The complainants appeal to this Court averring the Chancellor erred in limiting their recovery to the value of services rendered during that six-year period immediately preceding the death of M. A. McClanahan.

The facts establish the claimant, Alex McClanahan, is the nephew of M. A. McClanahan, deceased. The estate of M. A. McClanahan apparently has net assets in the amount of $18,192.85, which estate is apparently being administered in the Chancery Court of Hamblen County, Tennessee, under the style of Cause No. 8013, Will McClanahan, et al v. Lizzie McClanahan Hopkins, et al, in which cause the claim here involved was filed.

The facts further establish the claimant, Alex McClanahan, sometime during the year 1957, did find his uncle, M. A. McClanahan, rather seriously ill. Alex McClanahan took his uncle to the doctor, and daily tended to his needs, including food, care, medicine and personal attention. At that time Alex McClanahan lived in the Jaybird community of Hamblen County, which was some ten miles distant from the home of his uncle. Claimant and his wife both continued their care and attention to M. A. McClanahan. The record reveals the decedent had at that time other kin of equal degree but there is no showing of any concern or attention on the part of anyone but the two claimants.

In May, 1958, the claimants sold their home in the Jaybird community, purchased a trailer and had it located in the back yard of M. A. McClanahan. The claimants lived in this trailer about a year when they bought a lot from M. A. McClanahan about three hundred yards from the M. A. McClanahan residence and built a home there. The claimants testified the reason they moved from the Jaybird community as above related was to be near M. A. McClanahan and be better able to care for him.

The services rendered were daily cooking and delivering three meals, giving medicine, taking the decedent to the doctor, attending to his personal needs as they arose, doing his laundry, doing some farm work for him, and generally being available every day to attend to whatever might become necessary for the welfare of M. A. McClanahan.

M. A. McClanahan died on January 15, 1967. About seven weeks prior to death the decedent became seriously

ill. The claimants moved him to their home and gave him their personal attention. They made repeated trips carrying the decedent to the doctor; they bought and gave him medicines as prescribed. About two weeks prior to death, the decedent was bedfast, unable to control bodily functions and required repeated changes of bed clothes each day. All these services were performed by the claimants until the decedent died in their home on the date above stated.

The claimants received no compensation for those services and by their sworn claim they aver an understanding with M. A. McClanahan whereby they would be provided payment therefor by his Last Will and Testament. The details of the understanding could not be related by the claimants under T.C.A. sec. 24-105, commonly known as the Dead Man's Statute. See: Watts v. Rayman (1971) 62 Tenn.App. 333, 462 S.W.2d 520, and cases cited therein.

The statute prevents a "party" to a suit by or against the representative of a decedent from testifying to a transaction with or statement by the decedent, but it does not prevent other witnesses from testifying to such transaction or statement. Poole v. First National Bank (1946) 29 Tenn.App 327, 196 S.W.2d 563.

Witness, Hal Hale, former Justice of the Peace and County Judge of Hamblen County, testified he had known M. A. McClanahan for fifty years. This witness had assisted the decedent with his social security problems and the decedent had taken the witness somewhat into his confidence. Mr. Hale testified the decedent told him that he, the decedent, had to depend upon the two claimants

since the death of his wife. This witness had been in the M. A. McClanahan home when the claimant, Ida Mae Mc-Clanahan, brought food for M. A. McClanahan. Mr. Hale further stated M. A. McClanahan told him that "Alex was to be taken care of", and "that Alex taking care of him was to be—wanted him to have something for it, in other words."

Witness, E. N. Peoples, testified he was 73 years of age and was a first cousin of M. A. McClanahan. On one occasion when he and M. A. McClanahan were standing in the cemetery of their church, M. A. McClanahan made essentially the following statement: "I have Alex over there that takes care of me. He's my right hand man. I have to depend on him. I can't do things like I once did, can't take care of myself. He's my right hand man. I expect him to take care of me and I expect to take care of him."

 The foregoing testimony constitutes material evidence upon which the trier of fact could find the decedent did request the claimants to care for him and he would compensate them therefor. That testimony, coupled with the overwhelming preponderance of the evidence that the claimants did in fact leave their home in the Jaybird community and did, from sometime in the year 1957 until the decedent died on January 15, 1967, care for and personally feed, clothe, administer medicine, and attend every need of M. A. McClanahan, constitutes sufficient evidence from which the trier of fact could find those services were rendered based upon an understanding between the parties that the claimants would be paid therefor, and the services were not gratuitously rendered for a blood kin. It is also significant blood kin of equal

degree testified they lived within a mile or so of M. A. McClanahan, but none of them claim to have rendered any services to the decedent; all admitted the claimants did at least render some services.

We therefore affirm the Chancellor in his finding the claimants are entitled to compensation under the facts of this case, and the Administrator's assignment of error is overruled.

■ The Chancellor limited the amount recoverable to a period of six years immediately preceding the death of M. A. McClanahan. For the seven weeks, or forty-nine days, the decedent was in the claimants' home immediately prior to his death, the Chancellor allowed the claimants $20.00 per day or a total of $980.00. For the remaining 305 weeks, the Chancellor allowed claimants the sum of $15.00 per week, totaling $4,575.00. The two sums equal $5,555.00, which sum the Chancellor rounded out to the figure of $5,500.00, for which he gave judgment.

We agree with the Chancellor the proof justifies the amounts allowed and we affirm the weekly amounts for the six-year period for which the Chancellor allowed recovery.

We will now consider complainants' Assignment of Error that the Chancellor erred in holding T.C.A. sec. 28-309, the six-year statute of limitations on contracts, limited complainants' claim to those services rendered within six years of the death of M. A. McClanahan. The statute provides: "* * * actions on contracts not otherwise expressly provided for, shall be commenced within six years after the cause of action accrued." Therefore,

the determinative issue is the date the cause of action accrued.

This question was thoroughly examined and ruled on by a divided Court in the case of Murray v. Grissim (1956) 40 Tenn.App. 246, 290 S.W.2d 888, opinion by Judge Felts, wherein the Court was considering the applicability of the statute to an implied contract to pay for services rendered in the management of a farm.

After a review of cases and contract law in situations where the services rendered were continuous, of an undetermined duration of time, and rendered under an implied contract, the Court concluded the statute did not run against the party rendering those services as the services were performed, but the cause of action accrued when the services were completed or terminated. The Court adopted as the better statement of the rule the following from In re Swanson's Estate (1950) 73 S.D. 293, 42 N.W.2d 228, 230.

"Where services are continuously rendered over an extended period of time under an express or implied contract which does not fix the term of employment nor the time when compensation shall be payable, the contract is entire and the employee's right of action accrues and the statute of limitations begins to run when, and only when, the services are fully performed or the employment otherwise terminated."

█ Under the facts of this lawsuit, we reaffirm and adopt the rationale of the *Murray* case, supra. The cause of action in this lawsuit accrued on January 15, 1967, on which date the contract was terminated by the death

of M. A. McClanahan. The claimants' assignment of error is sustained.

The complainants by brief and argument stress the fact they moved from the Jaybird community to the trailer on the McClanahan property with the understanding they would be paid for their services. The date of the agreement the complainants had with M. A. McClanahan is not shown.

Under the record, and based upon the proven facts of services rendered, we hold the agreement and understanding between the parties was in existence when the complainants moved from the Jaybird community. We hold the complainants are entitled to compensation from that date. The move was made in May, 1958.

We will treat the contract in full force and effect from June 1, 1958. M. A. McClanahan died on Jauary 15, 1967. The complainants are entitled to pay for services rendered from June 1, 1958 until January 15, 1967, a period of 8 years, 7 months, and 14 days, or 446 weeks.

The complainants are entitled to $20.00 per day for the last 7 weeks of the life of M. A. McClanahan or the sum of $980.00. For the remaining 439 weeks the complainants are entitled to $15.00 per week, or the sum of $6,585.00, making a total amount due of $7,565.00.

The Decree of the Chancellor is thus modified, and a decree will be entered in this Court giving judgment for the complainants against Jean W. Jones, Administratrix for the sum of $7,565.00, plus interest thereon at the rate of 6% per annum from May 21, 1970, the date of the Chancellor's Decree.

This cause is remanded to the Chancery Court of Hamblen County, Tennessee for enforcement of the Decree rendered herein. Costs in the Chancery Court and in this Court are adjudged against Jean W. Jones, Administratrix.

Carney, P.J., and Nearn, J., concur.